Timmy TARRY *v.* STATE of Arkansas

CR 86-18                                    710 S.W.2d 202

Supreme Court of Arkansas
Opinion delivered June 9, 1986
[Rehearing denied July 14, 1986.*]

---

* Holt, C.J., not participating.

*L. Gene Worsham*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

GEORGE ROSE SMITH, Justice. The amended information in this case charged the appellant, Timmy Tarry, with burglary, robbery, and two counts of rape. The jury returned four separate verdicts, finding Tarry guilty of burglary, robbery, rape by deviate sexual activity, and rape by sexual intercourse. The jury fixed the sentences at 20 years each for the burglary and robbery and forty years each for the two rapes. The judge allowed the two 20-year sentences to run concurrently, but otherwise the sentences are to run consecutively.

For reversal it is argued that there should have been only one conviction for the crime of rape and that the judge committed reversible error in communicating with the jury outside the presence of the accused. We agree with the appellant's argument on the second point, but we must discuss the first point to the extent that the same issues will arise at a new trial.

Each side called several witnesses, but the testimony relevant to the first issue is that of the prosecutrix. She testified that she awoke at about 2:00 a.m. to find Tarry standing nude beside her bed. She recognized him, having known him for several years. When she screamed, he put his hand over her mouth and started slapping her. He got in bed with her and began feeling her body. She fought him, but he raised her gown and tore off her underwear. He tried to rape her, but could not get an erection. He sat there for awhile and then raped her with his finger, putting it in her vagina.

The prosecutrix said that Tarry then went into the bathroom. She thought about trying to get away, but she would have had to get past him and then open three locks to get out the front door. Tarry came back and lay on top of her. She said that this time he got an erection. "He penetrated me. He raped me." He returned to the bathroom and put on his shirt and pants. After

that he twisted her arm and tried to make her give him money. Eventually she managed to escape through a door into the garage and ran next door and called the police. The State introduced a statement in which Tarry admitted that he had entered the house through an ash box connected with the fireplace, but he denied the rape. At the trial he denied having been in the house at all. The jury evidently accepted the State's version of what happened.

■ It is argued that since there was only one continuous episode there was only one offense of rape, not two. We do not agree. The Criminal Code provides that when the "same conduct" of the defendant may establish the commission of more than one offense, the defendant may be prosecuted for each offense. Ark. Stat. Ann. § 41-105(1)(e) (Repl. 1977). The Commentary explains that the same conduct is intended to connote the same criminal transaction. The defendant may not be convicted of more than one offense if the conduct constitutes an offense defined as a continuing course of conduct. The Commentary explains that a continuing offense is one such as nonsupport or promoting prostitution.

■■ Rape is not defined as a continuing offense. It may consist of engaging in sexual intercourse or deviate sexual activity with another person by forcible compulsion. § 41-1803. Rape is a single crime that may be committed in either of two ways. *Cokeley* v. *State*, 288 Ark. 349, 705 S.W.2d 425 (1985). Here the prosecutrix testified that she had been raped in two different ways, and the jury so found by separate verdicts. There was not a continuing offense, for the two acts of rape were of a different nature and were separated in point of time. A separate impulse was necessary for the commission of each offense. There were two offenses. See *Rowe* v. *State*, 271 Ark. 20, 607 S.W.2d 657 (1980), cert. denied, 450 U.S. 1043 (1981).

It is argued that the State did not prove that the second rape was accomplished by force. Additional details may be developed at a second trial. It is also argued that the information was defective in that each of the two counts of rape charged the offense as having been committed by sexual intercourse or by deviate sexual activity. The defendant did not ask for a bill of particulars, as he could have done, and he now knows what the State's proof will be at a second trial.

The remaining issue arises from the judge's having entered the jury room. The trial was bifurcated, Tarry being charged as an habitual offender. The record shows that the jury retired for the second time, to fix the penalties. While the jury was out, the judge overruled an oral motion, not pertinent here, and then the record shifts abruptly to the subject at issue, as follows:

> The Court: With the agreement of counsel, after the jury had indicated that they had a question for the Court, the Court entered the jury room and received two questions from the foreman. The first being, the jury wants to know whether or not the sentences were to run concurrently or consecutively. Secondly, they want to know about parole eligibility of this defendant. What says the State?

For the next five pages of the record the court reporter sets out a long colloquy in which the two lawyers expressed their offhand views about what the judge should tell the jury. Both lawyers thought no information about parole could be given. The State wanted the judge to tell the jury that he would decide whether the sentences were to be concurrent or consecutive. Defense counsel thought that no information should be given. At that point the report of the incident ends as abruptly as it began. The reporter next notes that the jury returned from its deliberations with the verdicts fixing the penalties, which were handed to the judge and read into the record.

We think the implication given by the incomplete record is that the reporter recorded the colloquy in its entirety as long as the lawyers and the judge were speaking, but there is no indication of what happened when the colloquy ended. Since the whole interchange had to do with how the judge should answer the jury's two questions, we must infer that the judge went back into the jury room and answered the questions in some fashion; we do not know exactly how.

The procedure was improper and must be deemed prejudicial to the defendant. For more than a century we have had a statute which reads:

> After the jury retires for deliberation, if there is a disagreement between them as to any part of the evidence, or if they desire to be informed on a point of law, they must

require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to, the counsel of the parties. [Ark. Stat. Ann. § 43-2139 (Repl. 1977).]

For some years our decisions about how the trial courts should comply with the statutes were to some extent in conflict. Finally, in a unanimous opinion by Chief Justice Harris, we reviewed some of our earlier cases and declared that thenceforth the statute would be regarded as mandatory and should be strictly followed. When additional instructions are to be given, all the jurors must be called to the courtroom, with counsel being present or having been notified. *Andrews* v. *State*, 251 Ark. 279, 472 S.W.2d 86 (1971). That warning was repeated in more detail in *Jackson* v. *State*, 256 Ark. 406, 507 S.W.2d 705 (1974):

Although we have not held, and do not intend to hold, that this right of defendant cannot be waived, we take this means of giving notice that we will carefully scrutinize every case tried after the date of our decision in *Martin* (July 23, 1973) to determine whether there has been a waiver of defendant's right to have such proceedings held only in open court, and that all reasonable doubts will be resolved by us against waiver.

Soon after the *Andrews* case we held that strict compliance with the statute was waived where the attorneys went with the judge to the jury room, everything that happened was reported in the record, and there was no possibility of prejudice. *Martin* v. *State*, 254 Ark. 1065, 497 S.W.2d 268 (1973). On the other hand, we have held that non-compliance with the statute gives rise to a presumption of prejudice and have recognized that the State has the burden of overcoming that presumption. *Williams* v. *State*, 264 Ark. 77, 568 S.W.2d 30 (1978).

In the case at bar the judge should not have gone into the jury room, even by agreement of counsel. After his first such visit he put into the record an account of what had happened, which we have copied above. If the record stopped there, it might be possible for the error to be considered harmless, for the jury's questions had not been answered. But, as we have shown, the necessary inference from the incomplete record is that there was a second visit, during which the jury's questions were answered in

some manner. Since the State has not met its burden of showing what occurred, the trial judge's violation of the statute must be deemed to have been prejudicial to the defendant.

Reversed and remanded.