James Randall DURHAM *v.* STATE of Arkansas

CR 94-1051                                    899 S.W.2d 470

Supreme Court of Arkansas
Opinion delivered June 5, 1995

itations within which he or she must file for relief. *See* A.R.Cr.P. Rules 37.2(b) and 37.2(c).

*Christopher O'Hara Carter*, Baxter County Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Justice. This is an appeal from a conviction for kidnapping, attempted murder and aggravated robbery. Three points are raised on appeal; none have merit, and we affirm.

On October 29, 1993, the Mountain Home police department received a call concerning an abduction of Sandi Schultz, the proprietor of a store called, "New to You." The victim told police that shortly after she opened her store, a man entered, approached her from behind, and sprayed her face with mace. The man said to her, "Shutup, Sandi, I've got a gun. I can kill you." The victim struggled with her attacker but was unable to get away as he remained behind her with his arm around her neck and was significantly larger and stronger. She finally went limp, realizing the struggle was futile. She then tried to talk to him in an attempt to persuade him not to harm her.

He did not respond verbally, but instead began to choke her as she was lying on the floor. She said that she must have lost consciousness as the next thing she remembered she was waking up in a different room in the store. Her hands were bound behind her back with duct tape. She could hear her attacker in the next room, apparently trying to open the register because it was making a beeping sound, which it would do when it was not being opened properly.

Her assailant then returned and got the key to the front door from her pocket. She heard him lock the front door, and saw him go to the fuse boxes and turn off all the lights. He next found a cardboard box and placed her in it with her legs curled up against her chest. He also gagged her.

The victim reported that he taped the box shut, picked it up

and carried it outside the store where she was able to kick through the box and break out. She spit out her gag and ran to a nearby store and screamed, "Lock the door, lock the door. He's got a gun and he tried to kill me." The assailant ran away after her escape.

The police were contacted and the victim told them she recognized her assailant as someone who had come into her store within the last two weeks. Leads were developed and a photo lineup was put together with pictures of James Durham, the appellant, and five other men. The victim looked at the photo spread and identified appellant as her attacker.

Appellant was arrested and gave the police a statement. He told police he had been to the victim's store in the past week with his wife, inquiring about a child's safety seat. He admitted going into the victim's store on the 29th, spraying the victim's face with mace, struggling with her and binding her with duct tape. He said it was his intention to steal baby clothes and strollers for his pregnant wife. Appellant stated that when he put the victim into the box, he intended to take her out along the road and leave her there. He also stated that when he put her in the box, she was mumbling and "carrying on."

Appellant was charged with kidnapping, aggravated robbery and attempted first degree murder. A jury trial was held and appellant testified in his own behalf. He indicated to the jury that he did not remember providing the taped confession and that he was not guilty of the charges. On cross-examination, he stated that he was not saying that he did not commit the crimes, but that he did not remember committing them and had only a vague memory of the interview with the police.

Appellant was found guilty on all three charges and was sentenced to fifty years each for the kidnapping and aggravated robbery and ten years for the attempted murder. The trial court ordered the kidnapping and robbery charges to run consecutively and the attempted murder to run concurrently with the other two. Appellant appeals from that judgment.

## SUFFICIENCY OF THE EVIDENCE

Appellant first argues that the trial court erred in denying his motion for a directed verdict on all three charges. As to the

kidnapping, he argues that, under the facts of the case, the state had only a charge of an attempt to dispose of a dead body and not kidnapping because the victim testified that at one point during the episode she "played dead;" on the aggravated robbery charge appellant argues there was no proof anything was taken; and on the attempted murder charge he argues there was no evidence to show there was attempted murder.

At trial, appellant made a directed verdict motion at the close of the state's case specifying the same grounds he now argues on appeal. He then made a second motion for directed verdict at the conclusion of his case, incorporating the arguments made in connection with his initial motion. After rebuttal, at the close of all the evidence, appellant simply stated "I would renew all previous motions I have made."

A motion for a directed verdict is a challenge to the sufficiency of the evidence. To preserve that objection, the motion must be made at the close of the state's evidence and at the close of the case. A.R.Cr.P. 36.21(b). The motion must also be sufficiently specific to apprise the trial court of the ground asserted for the motion. *Jones* v. *State*, 318 Ark. 703, 889 S.W.2d 706 (1994); *Daffron* v. *State*, 318 Ark. 182, 885 S.W.2d 3 (1994); *Walker* v. *State*, 318 Ark. 107, 883 S.W.2d 831 (1994).

The state argues we should not reach the merits of the directed verdict motion because appellant's renewal of the motion at the close of all the evidence was general in nature only. The state acknowledges that appellant made a proper motion at the close of the state's case but argues under our cases and rules, specificity is required at the close of all the evidence as well as at the close of the State's case. We do not agree that the defendant should be required to restate his grounds for directed verdict in cases such as the one before us, where the defendant has made a specific motion at the close of the State's case, and incorporates the same arguments by the later renewal.

In *Walker* v. *State, supra*, we announced a "bright line" rule requiring specificity in directed verdict motions, and that general motions would no longer suffice. *See also, Monk* v. *State,* 320 Ark. 189, 895 S.W.2d 904 (1995)*; Davis* v. *State,* 319 Ark. 739, 894 S.W.2d 597 (1995); *Jones* v. *State, supra,; Davis* v, *State,* 319 Ark. 460, 892 S.W.2d 472 (1995); *Daffron* v. *State, supra; Goins*

v. *State*, 318 Ark. 688, 886 S.W.2d 633 (1995); *Houston* v. *State*, 319 Ark. 498, 892S.W.2d 274 (1995).

It is also true that we have held that a defendant waives the first motion made when he presents a case. *Rudd* v. *State*, 308 Ark 401, 825 S.W.2d 565 (1992). It is further true that we have taken pains in this area to assure that the trial court is apprised of the same arguments that are raised to us on appeal. *Stricklin* v. *State*, 318 Ark. 36, 883 S.W.2d 465 (1994). But neither series of cases militates against the *renewal* of the same earlier, specific directed verdict motion at the end of all the proof. Durham effectively raised the same grounds by his renewal at the end of all the evidence, as he had earlier presented to the trial court at the close of the State's case. He now argues the same grounds on appeal. His initial motion was specific as required by *Walker, supra*, was renewed at the close of all the evidence and we will thus reach the merits of his arguments.

### MERITS

Appellant first argues that the offense of kidnapping is inconsistent with the facts of the case, including the victim's testimony that she "played dead," and the additional charge of criminal attempt to commit first degree murder; in other words, he could not have intended to both kidnap and kill her. He suggests that the State has only established an attempt to dispose of a dead body under the facts, and that one cannot kidnap a dead body. In support of this novel argument appellant states that he did not provide a motive to the victim during the incident or to the police officers during his subsequent interrogation. He further states the facts at trial show that the victim was "grabbed, bound, gagged, placed in a box, choked until she passed out and then played dead."

As to the charge of aggravated robbery, appellant argues that he took nothing from the store and made no statement or demand of the victim to indicate he contemplated a theft. He states that he did not respond when the victim offered to show him where the money was, but concedes that, at trial, she testified she heard him trying to open the cash register.

For the final charge of criminal attempt to commit first degree murder, appellant argues that the facts as alleged by the State and the evidence presented would only give rise to a charge

of battery. In support of this argument he suggests that, other than the can of mace, he had no weapon and none was found at the scene, the victim was not severely injured and he denied any intent to kill the victim in his confession.

The following exchanges from appellant's confession, which was admitted into evidence, provide substantial evidence in support of the kidnapping and robbery charges:

Officer: . . . What was on your mind to do?

Durham: Go down there and spray mace in her face and take all the baby clothes that I could and strollers. Anything for the new baby, that Jennifer's carrying of mine.

. . .

Durham: That was my original intent was to get some clothes cause we didn't have no baby clothes. That's the truth. I wasn't there for money cause I had money in my wallet. I wasn't there to rape her cause I had a wife at home.

Officer: Why would you have bound her and put her in a box and tried to take her away from there? What were you gonna do? What was in your mind, Randall?

Durham: I was gonna take her off and drop her off somewhere. Just leave her there.

Officer: Well, hoping that she was lifeless, fairly appeared to be lifeless at that point, right?

Durham: She was talking and mumbling. I don't know what she was saying.

Officer: Were you afraid that you had killed her?

Durham: Pardon?

Officer: Were you afraid that you had killed her?

Durham: No.

Officer: Were you afraid that she was hurt bad enough that she was gonna die?

Durham: No.

. . .

His confession flatly contradicts the allegation that he believed the victim to be dead and it was therefore impossible for him to kidnap her. He stated that she was talking and mumbling when placed in the box and he denied being afraid that he had killed her.

■ He clearly confessed to the intent to commit theft which, along with the victim's testimony about sounds she heard coming from the cash register provided substantial evidence to support the aggravated robbery verdict. The aggravated robbery offense, Ark. Code Ann. § 5-12-103 includes the definition of robbery, A.C.A. § 5-12-102:

> (a) A person commits robbery if with the *purpose of* committing *a felony or misdemeanor theft* or resisting apprehension immediately thereafter, *he employs* or threatens to immediately employ *physical force upon another*. [Emphasis added.]

An actual theft or taking of property is not an element of the offense.

Finally, appellant's argument that the trial court erred in denying a directed verdict on the attempted first degree murder charge is also without merit. His argument is that no weapon was seen and that there was no attack or injuries to the victim that would support a charge of attempted murder. However, there is no requirement that attempted murder be pursued with a deadly weapon. What is required is "conduct that constitutes a substantial step in a cause of conduct intended to culminate in the commission of an offense." Ark. Code. Ann. § 5-3-201.

■ Here, the victim testified that appellant choked her until she passed out; this testimony surely is substantial evidence to support the finding of attempted murder. The intent to commit the offense may be inferred from the defendant's conduct and the surrounding circumstances. *Easter* v. *State*, 306 Ark. 615, 816 S.W.2d 602 (1991).

The appellant's arguments on the issue of the trial court's failure to direct a verdict on all three charges are meritless.

## CONSECUTIVE RUNNING OF SENTENCES

Appellant was sentenced to two fifty-year terms which the court ordered to run consecutively. Appellant argues that contrary to the law, the trial court relied on the jury's recommendation and not on its own discretion to make this decision. Although the state now argues this matter was not preserved for appeal because appellant did not object to the consecutive sentences at the time they were pronounced, the state allowed appellant's post-trial motion on the matter to be heard without objection.

Arkansas Code Annotated § 5-4-403 (Repl. 1993) provides that the choice between concurrent and consecutive sentences rests with the discretion of the trial judge. *Edwards* v. *State*, 300 Ark. 4, 775 S.W.2d 900 (1989). We have remanded for resentencing when it was apparent that the trial court did not exercise its discretion. *Brown* v. *State*, 316 Ark. 724, 875 S.W.2d 828 (1994); *Wing* v. *State*, 286 Ark. 494, 696 S.W.2d 311 (1985).

In *Wing, supra,* we remanded based on the trial court's comments on sentencing. Those comments indicated the trial court was relying completely on the jury's determination. The trial court said:

> If it had been left to me in the first instance, I feel I would have had a lot more leeway to act. I think it is somewhat presumptuous of me to go against a jury verdict. I have never done that except in a rare case where it's clearly out of line. I'm going to set and fix punishment, 20 years on the Burglary, 10 years on the Theft of Property, and direct that they run consecutive. I think if the jury had wished otherwise, they would have noted otherwise.

We remanded the case for resentencing because the trial court "tried to implement what he perceived the jury wanted rather than exercising his own discretion." In contrast, the trial court's comments in this case indicate the opposite:

> That was the court's concern in this case, this is — the court regards Mr. Durham as an extremely dangerous individual. Not only does he have a substantial criminal history, but the court was aware of some similar circumstances in a Missouri case in which he was tried and acquitted; but there were several parallels to this case, including

the strangulation of the woman that there may have been a murderous intent both in that case and in the case that was tried before this court. *So this court regards Mr. Durham as an extremely dangerous individual, so that was the reason the court ran those sentences consecutively.* I think that it was the court's impression that was the way the jury viewed it as well, was that they wanted him to receive consecutive sentences. Because even with consecutive sentences, he will be eligible for parole in 25 years or something. (Emphasis added.)

■ Giving the above comments their most reasonable interpretation, the trial court based its decision entirely on its own discretion. The short reference to the jury's desire was more in the nature of a comment and clearly not the motivation for the trial court's decision.

## VOLUNTARINESS OF CONFESSION

Appellant last argues his confession was not voluntary because it was the result of a promise of reward. He argues the police offered him a deal of 20–40 years if he cooperated and he did so by giving his statement. However, he contends that in return he was only made a minimum offer of 60 years, which he refused to accept.

■ All custodial confessions are presumed to be involuntary and the burden is upon the state to show the statement was voluntarily made. *Jackson* v. *State*, 284 Ark. 478, 683 S.W.2d 606 (1985). When reviewing the question of voluntariness of a confession, this court makes an independent review of the totality of the circumstances and reverses only if the trial court's finding is clearly against the preponderance of the evidence. *Hurst* v. *State*, 296 Ark. 448, 757 S.W.2d 558 (1988).

■ When a statement has been induced by a false promise of reward, the confession is not voluntary. *Hamm* v. *State*, 296 Ark. 385, 757 S.W.2d 932 (1988). We explained there that some statements are clearly a promise of reward, and when so, the confession is found involuntary. In other cases, the promise is more ambiguous. In those instances, we also look to the vulnerability of the defendant to aid in the determination.

In this case, appellant has misstated what the police said to

him. There was no offer to appellant for a 20–40 year bargain as he suggests. Instead, while interviewing appellant, the officers indicated that it could be important to him for them to get his side of the story, and one officer stated as an example: "So, instead of going to the joint for 40 years, a guy goes for 20." Further, after making this remark, the officers made it abundantly clear by repeating several times that it was the prosecutor, not the police, who could make the deals and that, at most, they could only make recommendations to the prosecutor.

Because of the limited example the officers gave appellant, and their clear and express statements that they had no power to strike a bargain with him, we do not find the officer's statement ambiguous in the first instance so there is no need to examine the appellant's vulnerability.

Affirmed.