Ralph DOUTHITT *v.* STATE of Arkansas

CR 96-622                                           935 S.W.2d 241

Supreme Court of Arkansas
Opinion delivered December 9, 1996

*Kenneth W. Haynes*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant, Ralph Douthitt, was convicted of sixty-one felony counts for rape, incest and violation of a minor, and was sentenced to serve 174 years at the Department of Correction. Douthitt brings this appeal with eight points for reversal. For an understanding of the issues, a short statement of the facts is necessary.

On March 28, 1995, Misty Wilson, eighteen years old, confided in her mother, Tammy Douthitt, that her stepfather, Ralph Douthitt, had been sexually abusing her since approximately 1988,

when she was eleven years old. Misty told her mother that over the course of those years, her stepfather had taken numerous nude photos and videos of her. That same evening, Tammy and Misty reported these prior incidents to Sergeant Jerry Hagar, who was with the Independence County Sheriff's Department. Misty told Hagar some of the photographs and other material might be kept in a metal ammunition box somewhere in the shop building (garage). Hagar asked Tammy if the police could have permission to search her house and the detached garage adjacent to it that night. Tammy agreed, and signed a consent to search form.

Upon arriving at the Douthitt residence the officers began their search of the garage, which was unlocked. Shortly thereafter, Douthitt arrived at the home and was immediately taken into custody. The officers continued their search of the garage, and discovered a false wall under a cabinet, which concealed a secret compartment. Within the secret compartment, the officers found a locked metal box and a videotape, which was attached beneath a shelf in the hidden compartment. The officers removed the locked metal box and broke the padlock with a screwdriver. Inside the box they discovered nude photographs of Misty and Douthitt's hand-written diary which corroborated what Misty had previously told Hagar. After searching the garage, the officers searched the home, where they found a metal box, photographs of Misty partially nude, and a two-way mirror from a bedroom that allowed viewing into the bathroom.

On April 11, 1995, an arrest warrant was issued for Douthitt based upon the statements of Misty and the evidence seized during the search. On the same day, the State filed its information against Douthitt, charging him with sixty-three (63) felony counts. Counts 1, 2, and 3 each charged Douthitt with rape, a class Y felony; counts 4 through 33 charged Douthitt with violation of a minor in the first degree, a class C felony; and counts 34 through 63 charged him with incest, a class C felony.

Douthitt filed a motion to suppress the evidence seized as a result of the search of his home and garage. He also filed a motion challenging the constitutionality of the State's incest statute. Both motions were denied.

Douthitt's first point for reversal concerns the trial court's denial of his suppression motion. The State's initial response is that

Douthitt's abstract is flagrantly deficient and fails to support his suppression argument. We must agree.

We initially note that, while Douthitt's motion below appeared to challenge the evidence seized from both the Douthitt's home and garage, Douthitt's argument focused only on the expectation of privacy he may have had regarding those items seized in the garage. He never seriously argued at trial that his wife, Tammy, did not have common authority to consent to the officers' search of their home; nor does Douthitt question that segment of the search in this appeal. In fact, Douthitt's argument concedes both Douthitt and Tammy jointly occupied the home, but Douthitt asserts no such joint occupancy or possession of the garage existed, permitting Tammy to consent to its search.

This court's problem in considering the validity of the officers' search of the garage arises because Douthitt fails to adequately abstract the exhibits whereby the members of this court can determine what evidence was taken from the garage and what was seized from the home. For example, Douthitt's abstract refers to 115 exhibits that apparently had been introduced at trial by the State, but exhibits 29 through 115 reflect no mention as to whether they were found — in the garage or in the home. Douthitt also submits a somewhat abbreviated abstract of Tammy Douthitt's and Officers Hagar's and Norman's testimonies at the suppression hearing, and those testimonies, too, fail to address where most of the 115 exhibits had been discovered. Even Douthitt's abstract of the trial testimony omits reference to most of the exhibits at issue.

The 115 exhibits in this case are obviously relevant in deciding Douthitt's suppression argument, and they are also important when considering what, if any, prejudice Douthitt may have sustained by an illegal search of the garage or the locked box found inside the garage. Too, we would point out that a metal box was found in the Douthitt's mobile home and exhibits were discovered in that box, but Douthitt's abstract fails to specify which ones.

While one could argue all the exhibits were relevant to the suppression motion raised by Douthitt, the posed photographs of Misty are particularly significant in determining how Douthitt may have been prejudiced by any invalid search of the garage, especially if any of those photos were discovered in the Douthitt home. This court's rule requires, unless waived by the court upon

motion, that the appellant reproduce a photograph and attach it to his abstract whenever that photograph must be examined for a clear understanding of the testimony. *See* Ark. Sup. Ct. R. 4-2(a)(6); *Bunn* v. *State*, 320 Ark. 516, 898 S.W.2d 450 (1995). Here, the record reflects no such waiver motion was made by Douthitt; nonetheless, he still chose not to reproduce and attach the photographs to his abstract.

In examining Douthitt's abstract, we see where he repeatedly stated he did not abstract certain exhibits or testimony because either he believed those portions of the record were irrelevant to the issues on appeal or he thought he had previously abstracted the relevant testimony. Unfortunately, such abstract omissions have caused considerable confusion for the justices who had no record to help them understand the relevant factual questions and omissions we have discussed hereinabove. Our rule is clear that, without proper abstracting, seven justices would be forced to pore through the sole record of the case on file with the clerk of the supreme court in search of the error(s) propounded by the defense. We have said repeatedly, and our rule so states, that we will not go to the record in search of prejudicial error. *Britton* v. *State*, 316 Ark. 219, 870 S.W.2d 762 (1994).

Douthitt's second argument is that Ark. Code Ann. § 5-26-202 (1987), the statute governing incest, does not provide for equal treatment of relatives by consanguinity and affinity and therefore violates the Equal Protection Clause. As pointed out by the State, this court has decided this issue in *Camp* v. *State*, 288 Ark. 269, 704 S.W.2d 617 (1986). In addressing the incest statute, the court mentioned Camp's argument that that law created a dichotomy of criminal responsibility between stepchildren and natural children. When addressing Camp's suggested dichotomy existing between natural parents and stepparents, this court further stated the following:

> [W]e are not persuaded that the disparate treatment of the statute is not intentional, or that it lacks a rational basis. The commentary to [§ 5-26-202] points out that stepchildren and adopted children have been added to the crime of incest because society is as concerned with the integrity of the family, including step and adoptive relationships as well as those of blood relationships, and sexual activity is equally disruptive, whatever the makeup of the family.

■ The *Camp* court, noting the presumption of constitutionality of the incest statute and in upholding it, quoted from the case of *Schock* v. *Thomas, Comm'r*, 274 Ark. 493, 625 S.W.2d 521 (1981), as follows:

> The Equal Protection Clause does not require that all persons be dealt with identically; it only requires that classification rest on real and not on feigned differences, that the distinctions have some relevance to the purpose for which the classification is made, and that the treatment be not so disparate as to be arbitrary.

■ In sum, Douthitt's argument fails to reflect the classifications under § 5-26-202 are arbitrary. Nor has he shown he is subjected to disparate treatment under the circumstances existing here. Regardless of whether Douthitt was related to Misty by consanguinity or affinity, the State's charges against him under the provisions of § 5-26-202 would effectively be the same.

Douthitt's next point asserts the trial court erred in failing to sever the three rape counts against him from the counts involving incest and first-degree violation of a minor. He submits the three rape counts were alleged to have occurred from 1989 through 1991 and a break in time existed between the other 60 counts that were alleged to have occurred in 1993 through March 1994. He argues this difference or "break" in time reflects the rape charges were not a part of a single scheme or plan and should have been severed.

■■ This court has often said that when the charge concerns the sexual abuse of a child, evidence of other crimes, wrongs, or acts, such as sexual abuse of that child or other children, is admissible to show motive, intent, or plan pursuant to A.R.E. Rule 404(b). *See Lukach v. State*, 310 Ark. 119, 835 S.W.2d 852 (1992). Here, the same evidence was admissible against Douthitt in each count of sexual abuse, so the trial court did not abuse its discretion in denying severance. *See Robinson* v. *State*, 314 Ark. 512, 863 S.W.2d 572 (1993). Before leaving this point, Douthitt also suggests error in failure to sever because the rape shield statute precludes evidence of the victim's prior sexual conduct for purposes of some of the crimes, but not for others. He submits that there is no statute excluding evidence of the victim's prior sexual conduct in a prosecution for incest, and he was entitled to introduce such evidence. In *Evans* v. *State*, 317 Ark. 532, 878 S.W.2d 750 (1994), this court held

that, although the rape shield statute does not apply to incest, the issue of admittance of the victim's prior sexual conduct is based upon relevancy and is relevant only if sexual intercourse was consensual. Consent, however, is never an issue in the crime of incest. *Id.* at 539. The trial court was correct in rejecting this argument of Douthitt's, too, when denying his severance motion.

In his fourth argument, Douthitt contends that the trial court erred in denying his proffer of Department of Human Services records that he asserts contain statements by Misty that she and Douthitt never had sexual contact. He argues that the denial of his proffer violated his right to attack Misty's credibility. No reversible error occurred, concerning this point, for two reasons. First, this court has held that the General Assembly clearly intended for unfounded reports by the Department of Human Services to be used solely within its own confines and further disclosure is prohibited. *Fox* v. *State*, 314 Ark. 523, 863 S.W.2d 568 (1993). Second, the record reveals Misty testified concerning the Department of Human Services investigation, and Douthitt had the opportunity to cross-examine her on this issue. Therefore, he has shown no prejudice.

Douthitt's next argument asserts that the trial court erred in denying his directed-verdict motion. In this respect, Douthitt urges that because the three rape counts were identically worded in the information and did not assert the time of each crime, the jury was unable to know what proof went with what count. Again, Douthitt fails to show a meritorious argument. First, this court has held that, while it is a better and safer practice to include in an information or indictment that date on which or the time frame in which an offense occurred, it is not necessarily fatal to the information or indictment if such data is not included, unless time is an essential element of the offense. *Bonds* v. *State*, 296 Ark. 1, 751 S.W.2d 339 (1988). The court has held that time is not an essential element of rape or incest. *Id.* at 4. Second, we also point out that the record fails to show Douthitt requested a bill of particulars, therefore, he is procedurally barred from raising this issue.

Douthitt's sixth point claims the trial court erred in denying a mistrial because he was compelled to announce to the jury that he did not have any witnesses. He claims the trial court's ruling caused a comment on his decision not to testify. This argument is wholly meritless. The record shows Douthitt merely stated, "Defendant rests," after the State concluded its case, and made no reference to

witnesses whatsoever. Also, Douthitt offers no legal authority or convincing argument concerning how his remarks constituted reversible error, and we know of none. *See Dixon v. State*, 260 Ark. 857, 545 S.W.2d 606 (1977).

Douthitt next urges error because the trial court improperly allowed the State, in its final argument, to tell the jury that they could look at Douthitt's handwritten diary, State's Exhibit 24, and track the dates set out therein and match them with the counts alleged in the information. He asserts the information is not evidence and is not available as such to the jury so as to fill a gap not covered by the evidence. Because Douthitt's error challenges the State's closing remarks, but he fails to abstract those remarks or closing argument, we do not consider this issue on its merits. *See Harris v. State*, 303 Ark. 233, 795 S.W.2d 55 (1990).

In conclusion, we have carefully considered each point advanced by Douthitt, and we affirm the trial court's rulings and decision for the reasons set out hereinabove.