George T. RAINS *v.* STATE of Arkansas

CR 97-245 953 S.W.2d 48

Supreme Court of Arkansas
Opinion delivered September 25, 1997

*Buford Gardner,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Kent G. Holt,* Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant George T. Rains appeals the judgment of conviction of the Boone County Circuit Court for six counts of rape, one count of attempted rape, and two counts of first-degree sexual abuse. The trial court sentenced Appellant as a habitual offender to a term of life imprisonment on each count of rape, sixty years' imprisonment on the count of attempted rape, and two terms of thirty years' imprisonment on each count of first-degree sexual abuse. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(2). Appellant raises two points for reversal. We find no error and affirm.

Appellant's convictions stem from his having engaged in sexual acts with three minor victims, namely his son J.P., his stepdaughter S.D., and his niece D.C. The sexual acts occurred over a period of time from June 1993 through February 1996, during which time J.P. was five to seven years old, S.D. was six to eight years old, D.C. was eight to ten years old, and Appellant was thirty-six to thirty-nine years old. The information charged that on or about February 3, 1996, Appellant committed two counts of rape, one count each against J.P. and S.D. Also on or about February 3, 1996, the information charged Appellant with the attempted rape of S.D. The four remaining counts of rape, charged in the information as having occurred sometime between June 1993 and February 1996, involved two counts against J.P. and two counts against S.D. Specifically, as to the two counts against J.P., the information charged that Appellant had made J.P. place his (Appellant's) penis in the child's mouth and that Appellant had also placed his penis in J.P.'s anus. As to the two remaining counts of rape against S.D., the information reflected that Appellant had made S.D. place his (Appellant's) penis in her mouth and that Appellant had also placed his tongue inside S.D.'s vagina. Lastly, the information charged Appellant with two counts of first-degree sexual abuse for having engaged in sexual

contact with S.D. and D.C. on a date sometime between June 1993 and February 1996.

## I. Sufficiency of the Evidence

For his first point for reversal, Appellant argues that there was insufficient evidence to sustain his convictions. He contends that the children's testimony was vague and unclear and that his convictions were based upon the jury's passion, rather than the evidence. The State argues that this point is procedurally barred because the grounds raised in Appellant's first motion for directed verdict differed from those raised in his motion at the close of all the evidence. It is the State's contention that because Appellant did not argue the lack of evidence of sexual penetration or deviate sexual activity in his first motion for directed verdict, that argument is not preserved for appeal. We disagree.

■■ It is well settled that arguments not raised at trial will not be addressed for the first time on appeal, and that parties cannot change the grounds for an objection on appeal and are bound by the scope and nature of their objections and arguments presented at trial. *Evans v. State*, 326 Ark. 279, 931 S.W.2d 136 (1996). Where the defendant's first motion for directed verdict was specific as to the missing proof, but his motion made at the close of the evidence was merely a general renewal of the first motion, his challenge to the sufficiency of the evidence was preserved for appellate review. *Durham v. State*, 320 Ark. 689, 899 S.W.2d 470 (1995). In *Durham*, the State argued that because the motion made at the close of the evidence was not specific, the defendant waived his challenges to the sufficiency of the evidence on appeal. This court ultimately reached the merits of Durham's argument because the grounds he raised for reversal were the same as those originally raised to the trial court. Thus, it is the opportunity of the trial court to first hear and address the parties' arguments that is of importance in determining whether the argument has been preserved for appeal. That both directed-verdict motions are not identical will not bar an appellant's argument on appeal.

■ Here, Appellant made specific motions for directed verdict at the end of the State's case and at the close of all the

evidence. The fact that he stated additional grounds in his final motion does not bar our consideration of them. Therefore, because Appellant has not raised any issues on appeal that were not first presented to the trial court, we will reach the merits of this argument.

■ On appeal, a motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *Williams v. State*, 329 Ark. 8, 946 S.W.2d 678 (1997). We view the evidence in a light most favorable to the State and consider only that evidence which supports the verdict. *Id.* Evidence, whether direct or circumstantial, is sufficient to support a conviction if it is forceful enough to compel reasonable minds to reach a conclusion one way or the other. *Id.* This court does not, however, weigh the evidence presented at trial, as this is a matter for the factfinder. *Dabney v. State*, 326 Ark. 382, 930 S.W.2d 360 (1996). Nor will this court weigh the credibility of witnesses. *Caldwell v. State*, 319 Ark. 243, 891 S.W.2d 42 (1995).

■ A person commits rape if he engages in sexual intercourse or deviate sexual activity with a person who is less than fourteen years of age. Ark. Code Ann. § 5-14-103 (Repl. 1993). "Deviate sexual activity" means any act of sexual gratification involving the penetration, however slight, of the anus or mouth of one person by the penis of another person or the penetration, however slight, of the labia majora or anus of one person by any body member or foreign instrument manipulated by another person. Ark. Code Ann. § 5-14-101(1) (Supp. 1995). Rape is not defined as a continuing offense; rather, it is a single crime that may be committed by either engaging in sexual intercourse or deviate sexual activity with, as in this case, another person who is less than fourteen years of age. *See Tarry v. State*, 289 Ark. 193, 710 S.W.2d 202 (1986). Where the prosecutrix testifies as to multiple acts of rape of a different nature, separated in point of time, there is no continuing offense, as a "separate impulse was necessary for the commission of each offense." *Id.* at 195, 710 S.W.2d at 203.

A person commits first-degree sexual abuse if, being eighteen years old or older, he engages in sexual contact with a person not his spouse who is less than fourteen years old. Ark. Code Ann.

§ 5-14-108 (Repl. 1993). "Sexual contact" means any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, or buttocks, or anus of another person or the breast of a female. Ark. Code Ann. § 5-14-101(8) (Supp. 1995).

 This court has repeatedly held that the uncorroborated testimony of a rape victim, whether adult or child, is sufficient to support a conviction. *Evans*, 326 Ark. 279, 931 S.W.2d 136; *Caldwell*, 319 Ark. 243, 891 S.W.2d 42; *Winfrey v. State*, 293 Ark. 342, 738 S.W.2d 391 (1987). Likewise, the victim's testimony need not be corroborated to demonstrate sufficient evidence of first-degree sexual abuse. *McGalliard v. State*, 306 Ark. 181, 813 S.W.2d 768 (1991). To the extent there may be inconsistencies in the victims' testimony, this is a matter of credibility for the jury to resolve. *Puckett v. State*, 324 Ark. 81, 918 S.W.2d 707 (1996). In cases of sexual abuse, it may be assumed that the defendant had sexual contact with the victim for the purpose of sexual gratification, and it is not necessary for the State to directly prove that he was so motivated. *Holbert v. State*, 308 Ark. 672, 826 S.W.2d 284 (1992). *See also McGalliard*, 306 Ark. 181, 813 S.W.2d 768; *Williams v. State*, 298 Ark. 317, 766 S.W.2d 931 (1989).

 It is similarly not necessary for the State to prove specifically when and where each act of rape or sexual contact occurred, as time is not an essential element of the crimes. *See Douthitt v. State*, 326 Ark. 794, 935 S.W.2d 241 (1996); *Bonds v. State*, 296 Ark. 1, 751 S.W.2d 339 (1988). It is rare that youthful victims of sexual abuse can provide exactness as to the time an offense occurred, and any discrepancies in the testimony concerning the date of the offense are for the jury to resolve. *Yates v. State*, 301 Ark. 424, 785 S.W.2d 119 (1990). In order to prove a charge of attempted rape, it must be shown that the defendant's actions constituted a substantial step in a course of conduct intended to culminate in the commission of rape. *Daffron v. State*, 318 Ark. 182, 885 S.W.2d 3 (1994).

J.P. testified at trial that on at least four occasions, Appellant put his "private" or "wiener" in J.P.'s anus or in his mouth, mak-

ing J.P. suck on it. He stated that Appellant had also put his (J.P.'s) wiener in his (Appellant's) mouth and sucked on it. He stated that these acts occurred three times at the trailer near Dogpatch, where he lived with Appellant, his mother, and S.D. He stated that the acts occurred once at his grandmother's house in Bergman. He stated that Appellant had also put his wiener in S.D.'s private. He stated that sometimes "gooey," "yellow" stuff would come out of Appellant's wiener. He stated that the last time such acts had occurred was at his grandmother's house, while his grandmother was gone and he was alone with Appellant and S.D. He stated that on that occasion, Appellant told him to suck on Appellant's wiener and that he did as he was told. He stated that Appellant put his wiener into his (J.P.'s) anus and that it hurt, but that he did not cry. He stated that he remembered Appellant "coming" on S.D. while she was on the bed with Appellant. He stated that Appellant made S.D. suck on his (Appellant's) wiener. He stated that during each incident that occurred at the trailer, Appellant made him put his (Appellant's) wiener in his mouth, and that S.D. was present each of those three times. He stated that the incident in Bergman was not the only time that Appellant put his wiener in his (J.P's) anus.

S.D. testified that Appellant was her stepdad and that at one time she had lived with Appellant, her mother, and J.P. in a trailer in Dogpatch. She stated that Appellant made her suck his "thingy," which she said was her word for penis. She stated that Appellant had made her do this in too many places to remember, but that he had made her perform such acts of oral sex on him on more than three occasions while they lived at the trailer. She stated that when Appellant would make her put his thingy in her mouth she would be dressed and he would be wearing a shirt. She stated that Appellant had also licked her thingy, which she described as being between her legs, where she goes to the bathroom. She stated that on one occasion Appellant tried to put his thingy inside her thingy. She stated that Appellant would get on top of her or put her on top of him, while her clothes were off and he was wearing a shirt, and would rub on her. She stated that stuff would come out of Appellant's thingy on different occasions at the trailer and at her grandmother's house in Bergman, and that

it had got on her and it felt "yucky." She stated that when Appellant tried to put his thingy in her thingy, it hurt and it tickled, but that it mostly tickled when he rubbed it against her. She stated that she had also seen Appellant doing the same kinds of things to J.P., putting J.P.'s thingy in his mouth and sucking on it, and making J.P. suck his thingy. She stated that on one occasion while she was staying at her Aunt Marsha's house, when she was six years old, Appellant had made her and her cousin, D.C., put their hands on his thingy. She stated that the last time Appellant had abused her was at her grandmother's house about two weeks before her Aunt Marsha questioned her about the abuse.

D.C. testified that Appellant was her uncle and that he had lived with her family at different times. She stated that during one of the times when Appellant was living with them, about two or two and one-half years ago, Appellant had made her and S.D. touch his private part. She stated that her mother had gone to the store and that Appellant had told the two girls to go to bed. She said Appellant later came into their bedroom and made them touch his penis. She stated that Appellant made each of the two girls take turns touching it, and that it got hard at one time and white stuff came out of it. She stated that when her mother started pulling into the driveway, Appellant made the girls get into bed and then went into the living room.

Marsha Douglas, D.C.'s mother and Appellant's sister, testified that Appellant was married to S.D.'s and J.P.'s mother until February 1995. She stated that while Appellant was married to the children's mother, they had lived in a trailer in Dogpatch, off Highway 7. She stated that Appellant had lived with her and her family in Bergman on two different occasions, the first being two and one-half to three years ago, and the second being around the end of April 1995. She stated that she became aware of the sexual abuse in February 1996, while she was questioning the children about two events, which occurred at their grandmother's house in Bergman, involving some of the children performing oral sex on each other. She stated that when she questioned D.C., the child told her that Appellant had made her and S.D. fondle him a couple of years earlier, when Appellant had lived with them. She

stated that she then questioned S.D. and J.P. separately and that both children told her about the abuse.

From the foregoing evidence, it is clear that there was sufficient evidence presented to the jury to sustain the convictions against Appellant. Concerning the two counts of first-degree sexual abuse, both S.D. and D.C. stated that Appellant had made them touch his penis. D.C., the older of the two girls, stated that Appellant made the girls take turns touching him and that his penis got hard and that white stuff came out of it. Such testimony is more than sufficient to prove that Appellant engaged in an act of sexual gratification with the girls, who were both under the age of fourteen, involving the direct touching of his penis.

As for the two counts of rape on February 3, 1996, both J.P. and S.D. testified that Appellant made them engage in oral sex with him. Additionally, J.P. stated that on that occasion, Appellant put his wiener in the child's anus. As to the count of attempted rape, which also occurred on that date, S.D. stated that Appellant had tried to put his thingy in her thingy and that it hurt and tickled. J.P. corroborated S.D.'s testimony by stating that Appellant put his wiener in S.D.'s private. The children's testimony sufficiently establishes the acts of deviate sexual activity against each child and the act of attempted penetration of S.D.'s vagina.

As for the four remaining counts of rape alleged to have occurred during the time the children lived with Appellant in the trailer in Dogpatch, there was sufficient evidence presented by both J.P. and S.D. to support the convictions. J.P. testified that on at least four occasions, Appellant had made him perform oral sex or had engaged in anal sex with him. On three occasions at the trailer, J.P. stated that Appellant made J.P. suck his wiener. He also stated that the incident in Bergman was not the only time Appellant had put his wiener in J.P.'s anus. S.D. stated that Appellant made her suck his thingy on more than three occasions while they lived at the trailer and that Appellant had licked her thingy. Clearly, this testimony is more than sufficient to sustain the four counts of rape involving deviate sexual activity against both J.P. and S.D.

## II. Motion for New Trial

For his second point for reversal, Appellant argues that the trial court erred in failing to have Appellant present for the hearing on his motion for new trial. This point is procedurally barred because Appellant did not file a timely notice of appeal of this issue.

The record reflects that a judgment and commitment order against Appellant was filed on September 4, 1996, and that Appellant filed his notice of appeal on September 20, 1996. An amended judgment and commitment order was filed on October 2, 1996, of which Appellant filed a second notice of appeal on October 4, 1996. Also on October 4, 1996, Appellant filed a motion for new trial based upon juror misconduct. On February 24, 1997, some 143 days after the motion was made, an order denying the motion was filed. Appellant then filed an additional notice of appeal on February 26, 1997.

Recently, in *Harris v. State*, 327 Ark. 14, 935 S.W.2d 568 (1997), we held that where a posttrial motion, such as a motion for new trial, is not resolved by the trial court within thirty days from the date of its filing, it is deemed denied pursuant to Ark. R. App. P.—Crim. 2. In that case, the judgment of conviction against Harris was entered on October 5, 1995, and Harris filed a motion for new trial on October 16, 1995, asserting juror misconduct. Fifty-one days after Harris filed his motion, on December 6, 1995, the trial court entered its order denying the motion. Harris filed his notice of appeal on January 2, 1996. We concluded that because Harris's motion for new trial was filed on October 16, 1995, it was deemed denied thirty days later on November 15, 1995, and that his notice of appeal was thus untimely.

In the present case, Appellant's motion for new trial was deemed denied as of November 3, 1996. Accordingly, Appellant had thirty days within which to file a notice of appeal from that denial, which expired on December 3, 1996. It is of no benefit to Appellant that the trial court belatedly denied the motion for new trial on February 24, 1997, as the trial court lacked jurisdiction to so rule. *Id.* Therefore, because Appellant

did not file his notice of appeal of the order denying the motion for new trial until February 26, 1997, we dismiss this part of the appeal.

## III. *Rule 4-3(h)*

In accordance with Rule 4-3(h) of the Arkansas Supreme Court Rules, the record has been reviewed for adverse rulings objected to by Appellant but not argued on appeal, and no such errors were found. For the aforementioned reasons, the judgment of conviction is affirmed.

GLAZE and IMBER, JJ., concur.

TOM GLAZE, Justice, concurring. I concur in affirming this case, but write to disagree with the majority court's decision to reach the merits regarding appellant's motion for directed verdict questioning the sufficiency of the State's proof on the elements of penetration and deviant sexual conduct. In stating his motion for directed verdict at the end of the State's case, appellant contended the State had failed to prove rape because the State never showed when and where these events occurred. No mention was made that the State had failed to show the elements of penetration or deviant sexual conduct. It was only after the defense had rested, and at the close of all evidence, that appellant renewed his directed-verdict motion, stating the State had failed to prove the time and place of the rapes *and* the elements of penetration or deviant sexual conduct.

Rule 33.1 of the Arkansas Rules of Criminal Procedure provides that the failure of a defendant to move for a directed verdict at the conclusion of the State's case and at the close of the case because of insufficiency of the evidence will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the jury verdict. Rule 33.1 further requires the defendant to specify the respect in which the evidence is deficient, and the renewal of a previous motion for a directed verdict at the close of all the evidence preserves the issue of insufficient evidence for appeal.

In *Durham v. State,* 320 Ark. 689, 899 S.W.2d 470 (1995), this court made clear that our case law does not militate against the *renewal* of the *same, earlier, specific* directed verdict motion at the end of all the proof. However, this court has never intimated that a defendant may omit a reason(s) in defendant's directed–verdict motion at the end of the State's case, and later add it when defendant moves for directed verdict at the close of all the evidence. Obviously, if this were the rule, a defendant could simply delay and withhold defendant's real reasons for directed verdict until after all evidence has been presented.

In *Walker v. State,* 318 Ark. 107, 883 S.W.2d 831 (1994), this court thoroughly discussed and explained the standard for preserving an insufficiency-of-the-evidence argument and set out the practical reasons for requiring that the grounds be specified in a defendant's directed–verdict motion. One reason is that, in multiple-count cases, it is easy for an element to be overlooked. Another reason given by the *Walker* court is stated as follows:

> The reasoning underlying our holdings is that when specific grounds are stated and the absent proof is pinpointed, the trial court can either grant the motion, or, if justice requires, allow the State to reopen its case and supply the missing proof.

*See also Webb v. State,* 327 Ark. 51, 938 S.W.2d 806 (1997).

In the present case, as clearly set forth in the majority opinion, the State's proof sufficiently proved all elements of the rape counts. However, I am of the view that Rains failed to preserve his argument pertaining to the penetration and deviant sex elements, so I would hold Rains is procedurally barred ·in arguing those elements in this appeal.

IMBER, J., joins this concurrence.