2010 Ark. App. 619

**Danny Ray HENINGTON, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 10–6.**

Court of Appeals of Arkansas.

Sept. 22, 2010.

Meryl Harvey Harris, North Little Rock, for appellant.

Dustin McDaniel, Atty. Gen., Jake H. Jones, Little Rock, for appellee.

M. MICHAEL KINARD, Judge.

Danny Ray Henington appeals his conviction for rape, arguing that there was insufficient evidence to support the verdict and that certain testimony was improperly admitted. We affirm.

Appellant was charged with rape based on an incident involving appellant and his five-year-old step–granddaughter, K.J. In a motions hearing prior to the jury trial, the State sought permission to introduce the testimony of D.W. pursuant to the "pedophile exception" to Arkansas Rule of Evidence 404(b). During the motions hearing, D.W. testified that, when she was about five years old, appellant was her mother's live-in boyfriend, and that she lived in the same home with appellant and her mother. D.W. claimed that appellant entered her room one night while her mother was sleeping, raised her night-

gown, pulled down her panties, unzipped his pants, and "put himself inside" her. The trial court ruled that the testimony would be admissible at trial but only if introduced after K.J.'s testimony, assuming K.J.'s testimony was sufficiently similar to D.W.'s testimony.

At the jury trial, Natalie Jones, K.J.'s mother, testified that appellant was married to her mother-in-law, Patti Henington, and that K.J. and her other children stayed with appellant and Patti for about three weeks during the summer of 2008. When appellant and Patti returned the children on August 10, 2008, K.J. complained of soreness in her private area. Upon checking the area, Natalie noticed redness and questioned K.J. about whether she had been wiping properly. K.J. then told her mother, "Grandpa humped me." Approximately a week and a half later, Natalie and her husband took K.J. to the Children's Safety Center in Springdale, Arkansas, for a physical exam and forensic interview. A video recording was taken of the interview.

K.J., then six years old, also testified at the trial. She stated that appellant was her grandpa and that she called him "Grandpa Danny." She and her siblings had stayed in appellant's home for several nights, during which time the children slept in the living room, while appellant slept in his bedroom with her grandmother. K.J. then described how one night appellant came into the living room where she was sleeping and touched her private area under her clothes, on top of her skin. She stated that his hand touched her on the outside of her skin but not on the inside of her skin. He then told her to "go to bed."

During cross-examination, K.J. displayed reluctance to talk to the defense attorney and answered most questions with nonverbal shakes or nods of the head. In response to the defense attorney's questions, K.J. denied ever talking with the investigator at the Children's Safety Center, denied using the word "hump," denied stating that her grandmother had touched her big brother, and denied stating that appellant had a tattoo on his back.

After K.J.'s testimony and outside the presence of the jury, the parties revisited the issue of whether D.W.'s testimony would be permitted under Arkansas Rule of Evidence 404(b). The trial court ruled that the two incidents were sufficiently similar so that D.W.'s testimony could be brought before the jury.

The State then played the DVD recording of K.J.'s forensic interview for the jury. In the interview, K.J. described how "Grandpa Danny" had touched her private area with his finger, under her clothes, on the inside and outside of her private. K.J. had previously explained through the use of anatomical drawings that "private" is the word she used to describe her vagina. She said the incident had happened at night at appellant's home, and she had been sleeping in the living room on a couch. Her brother and sister were asleep in the same room when this occurred. She also said that he "got up there and humped" her. The interviewer then showed K.J. two anatomically correct dolls, one male and one female. K.J. demonstrated with the dolls how appellant pulled his pants down to expose his private area, pulled her clothes up, touched her private area with his hand, and lay on top of her, touching his private area to her private area. When asked how it felt when appellant did this, she stated, "like rotten panties." In the same interview, K.J. also stated that appellant had a tattoo of a spider on his back and that her grandmother had touched her big brother.

When D.W. testified at the jury trial, she gave substantially the same testimony

as she had given during the previous hearing: when she was around five years old, appellant came into her room at night and sexually penetrated her. After D.W.'s testimony, the State rested, and the defense moved for directed verdict, which was denied.

Appellant testified on his own behalf and generally denied the allegations. He claimed he never knew that D.W. had made allegations against him until this case arose. He also claimed that the only time he had ever had contact with K.J.'s private area was when he changed her after she wet herself while sleeping at his home one night. He stated that, by doing so, he was only trying to be a good grandparent.

The defense renewed its motion for directed verdict at the close of its case, and the motion was again denied. The jury returned a verdict of guilty for the offense of rape. In a judgment and commitment order entered on June 3, 2009, the trial court sentenced appellant to thirty-six years in the Arkansas Department of Correction. Appellant filed a timely notice of appeal on June 5, 2009.

For his appeal, appellant first asserts that the trial court erred when it failed to grant his motion for directed verdict. A motion for directed verdict is considered a challenge to the sufficiency of the evidence. *Ross v. State*, 346 Ark. 225, 230, 57 S.W.3d 152, 156 (2001). When an appellant challenges the sufficiency of the evidence, we address that issue before any others. *Steggall v. State*, 340 Ark. 184, 189, 8 S.W.3d 538, 542 (2000). The test for determining the sufficiency of the evidence is whether substantial evidence supports the ₅verdict. *Ross*, 346 Ark. at 230, 57 S.W.3d at 156. Substantial evidence is that of sufficient certainty and precision to compel a conclusion one way or the other which passes beyond mere speculation and conjecture. *Id.* The uncorroborated testimony of a rape victim, whether the victim is an adult or a child, is sufficient to support a conviction. *Rains v. State*, 329 Ark. 607, 613, 953 S.W.2d 48, 52 (1997). On appeal, this court will not weigh the evidence or assess the credibility of witnesses, as those are matters for the jury. *Id.* at 612, 953 S.W.2d at 51. Inconsistencies in the victim's testimony present an issue of credibility for the jury to decide, not the appellate court. *Id.* at 613, 953 S.W.2d at 52. The appellate court views the evidence in the light most favorable to the appellee and considers only the evidence that supports the verdict. *Id.*

A person commits rape if he engages in deviate sexual activity with a person who is less than fourteen years old. Ark.Code Ann. § 5–14–103(a)(3) (Repl.2006). Deviate sexual activity includes any act of sexual gratification involving the penetration—however slight—of the labia majora of a person by any body member of another person. *Id.* § 5–14–101(1)(B). Appellant does not challenge the fact that K.J. was younger than fourteen years old; he challenges only the evidence showing that he engaged in deviate sexual activity with K.J.

Appellant's challenge is without merit. The jury in this case had before it both the testimony of the child victim and a DVD of her initial interview, conducted not long after the incident occurred. In both settings, K.J. described how appellant sexually molested her at night in the living room of his home while her brother and sister slept nearby. Both ₆accounts described how appellant touched K.J.'s private area with his hand underneath her clothes. In the forensic interview, K.J. explained that the touching was both on the inside and the outside of her skin. This evidence alone was sufficient to support the conviction. However, during the

interview K.J. also demonstrated appellant's actions with anatomically correct dolls. Although there were some inconsistencies between the testimony K.J. gave on the stand and the statements she had given during the interview, it is not this court's place to determine whether the inconsistencies affected K.J.'s credibility. Therefore, we find the evidence sufficient to support the rape conviction.

 Appellant also argues that it was reversible error for the trial court to allow the testimony of D.W. under Arkansas Rule of Evidence 404(b). The admissibility of evidence is at the discretion of the trial court, and the appellate court will not disturb the trial court's ruling without a showing of manifest abuse of discretion. *Allen v. State*, 374 Ark. 309, 316, 287 S.W.3d 579, 584 (2008). Generally, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show a propensity for similar acts. Ark. R. Evid. 404(b) (2010). Such evidence may be permissible, however, when it is offered for other purposes. *Id.* Evidence offered under this rule must be independently relevant to the main issue, so that it tends to prove some material point rather than merely proving that the defendant is a bad person. *Allen*, 374 Ark. at 316, 287 S.W.3d at 584.

 The Arkansas Supreme Court has recognized a "pedophile exception" to Rule 404(b) where evidence of similar acts with the same or other children may be helpful to show a proclivity for certain acts with a person or class of persons with whom the defendant has an intimate relationship. *Id.* at 316, 287 S.W.3d at 584–85. The rationale behind the exception is that such evidence helps prove the depraved sexual instinct of the accused. *Id.* at 316, 287 S.W.3d at 585. For the exception to apply there must be a sufficient degree of similarity between the proposed evidence and the sexual conduct at issue. *Id.* at 317, 287 S.W.3d at 585. Also, there must be an intimate relationship between the defendant and the victim of the prior act. *Id.* The "intimate relationship" requirement can be satisfied when a defendant lives in the same home as the victim or otherwise has access to the victim. *See Kelley v. State*, 2009 Ark. 389, at 10, 327 S.W.3d 373.

 In this case, D.W.'s testimony was offered to show that appellant had a proclivity for sexually molesting young girls. There were several similarities between what happened to D.W. and what happened to K.J. Both girls were approximately five years old when the abuse took place. Both incidents occurred at night while others in the home were sleeping. In both incidents, appellant entered the room where the girl was sleeping, pulled up her nightclothes, and pulled down his pants to expose his private area. Both girls described penetration. Also, both incidents involved touching by appellant rather than appellant asking or forcing the girls to touch him. Furthermore, both incidents occurred in the home where appellant was living at the time. Given these facts, we cannot say the trial court abused its discretion in finding that the incidents were sufficiently similar to meet the requirements of the pedophile exception.

There was also evidence of an intimate relationship between appellant and D.W. to satisfy the requirements of the exception. D.W. testified that the abuse occurred while appellant was romantically involved with her mother and living in her home for a period of several months. According to our case law, this is sufficient to show an intimate relationship. To dispute this, appellant merely references other cases where the defendant had more of a friendship or an authoritative role over the witness. Without citing any authority, ap-

pellant argues that living in the same home is not enough to establish an intimate relationship. We will not consider the merits of an argument where an appellant fails to cite authority or provide a convincing argument. *Isom v. State*, 356 Ark. 156, 180, 148 S.W.3d 257, 273 (2004). Thus, the "intimate relationship" requirement of the exception has been met in this case.

Appellant also argues that two incidents of sexual abuse are not enough to show a proclivity for a specific sexual act. Again, appellant offers no citation to authority to support this claim, nor has he made any convincing arguments to compel us to consider it.

Finally, appellant argues that D.W.'s testimony was not independently relevant to the main issue. In making this argument, appellant fails to recognize that meeting the requirements of the pedophile exception is what makes this kind of evidence independently relevant. To require evidence offered under the exception to prove a specific element of the recent crime would make the exception inapplicable in almost every case. In determining whether to admit D.W.'s testimony, the trial court was not required to find that her testimony proved that appellant engaged in deviate sexual activity *with K.J.*, as appellant asserts. Instead, her testimony demonstrated appellant's proclivity to engage in sexual activity with very young girls. The trial court did not err in admitting D.W.'s testimony.

Affirmed.

ROBBINS and BROWN, JJ., agree.