James D. SMITH *v.* STATE of Arkansas

CR 02-1258                                        118 S.W.3d 542

Supreme Court of Arkansas
Opinion delivered September 25, 2003

*Baxter, Jensen, Young & Houston*, by: *Ray Baxter* and *Brent Houston*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

JIM HANNAH, Justice. A Clark County jury convicted appellant James "Smokey" Smith of twenty counts of violation of

a minor in the first degree in violation of Ark. Code Ann. § 5-14-120 (Repl. 1997) (repealed).[1] In accordance with the verdicts, the trial court imposed five four-year sentences for counts one through five and sentences of a zero-dollar fine for the remaining fifteen convictions. At the request of the prosecuting attorney and over Smith's objection, the trial court ordered the five four-year sentences to be served consecutively.

At trial, the State alleged that Smith, a teacher in the Arkadelphia Public Schools, committed twenty counts of violation of a minor in the first degree by having a sexual relationship with A.C., a minor student, from April 1999 to October 2000. At the time counts one through nineteen were alleged to have occurred, Smith was a teacher at Goza Junior High School, a school in the same school district as A.C.'s high school. In the fall of 2000, Smith began teaching at Arkadelphia High School. A.C. alleged that count twenty occurred after Smith began teaching at the high school. At all times relevant to this case, Smith was also employed as a school-bus driver for the Arkadelphia Public Schools.

Smith raises ten points on appeal, and the State raises one point on cross-appeal. Smith argues that: (1) the trial court erred in not declaring Ark. Code Ann. § 5-14-120 unconstitutional for violating the Equal Protection Clauses of the United States Constitution and the Arkansas Constitution; (2) the trial court erred in admitting certain evidence which was irrelevant to proving the guilt of the appellant; (3) the trial court erred in admitting a photograph into evidence; (4) the trial court erred in not declaring a mistrial when a prosecution witness testified that pornography was found on the defendant's computer; (5) the trial court erred in not granting a mistrial when the prosecution presented evidence that Smith had an extramarital affair and a child born as a result, which occurred twenty years ago; (6) the trial court erred in denying him the right to cross-examine the alleged victim regarding her sexual history, when she testified on direct examination that Smith "was the only one I was with;" (7) the trial court erred in not giving the jury a proffered defense instruction regarding the greater weight of the evidence; (8) the trial court erred in allowing

---

[1] The General Assembly repealed Ark. Code Ann. § 5-4-120 in the 2001 legislative session. See 2001 Ark. Acts No. 1738. Act 1738 became effective August 13, 2001, and does not apply in this case because Smith committed the offenses at issue before that date.

the mother of the alleged victim to testify during sentencing about alleged violations of the court's No Contact Order between Smith and her daughter; (9) the trial court erred in imposing consecutive sentences when Smith's actions amounted to one course of conduct; and (10) the trial court erred in finding that it did not have jurisdiction to hear a motion for new trial when, following the filing of the first notice of appeal, defense counsel discovered, within the files of the prosecuting attorney and the Arkadelphia Police Department, exculpatory evidence which was not made available to the defense.

The State raises one issue on cross-appeal. The State argues that Smith's sentences of no term of imprisonment and a fine of zero dollars for fifteen of his twenty convictions are illegal.

We affirm the trial court on all points on direct appeal. We reverse and remand on cross-appeal for resentencing on counts six through twenty. Our jurisdiction is pursuant to Ark. S. Ct. R. 1-2(8) and Ark. R. App. P.—Crim. 3.

### Constitutionality of Ark. Code Ann. § 5-14-120

Smith alleges that his right to equal protection of the laws was violated when he was prosecuted for violation of a minor in the first degree pursuant to § 5-14-120(a) (Repl. 1997) (repealed). Section 5-14-120(a) provides:

> (a) A person commits the offense of violation of a minor in the first degree if he engages in sexual intercourse or deviate sexual activity with another person not his spouse, who is more than thirteen (13) years of age and less than eighteen (18) years of age, and the actor is the minor's guardian, an employee in the minor's school or school district, a temporary caretaker, or a person in a position of trust or authority of the minor.

Smith argues that an impermissible classification exists between persons who are employed by school districts and persons who are not employed by school districts. The Equal Protection Clause permits classifications that have a rational basis and are reasonably related to a legitimate government purpose. *Seagrave v. Price*, 349 Ark. 433, 79 S.W.3d 339 (2002). Equal protection does not require that persons be dealt with identically; it only requires that classification rest on real and not feigned differences, that the distinctions have some relevance to the purpose for which the

classification is made, and that their treatment be not so disparate as to be arbitrary. *McDole v. State*, 339 Ark. 391, 6 S.W.3d 74 (1999).

■ On an equal-protection challenge to a statute, it is not our role to discover the actual basis for the legislation. *Jegley v. Picado*, 349 Ark. 600, 80 S.W.3d 332 (2002). We merely consider whether there is any rational basis which demonstrates the possibility of a deliberate nexus with state objectives so that legislation is not the product of arbitrary and capricious government purposes. *Id.* If we determine that any rational basis exists, the statute will withstand constitutional challenge. *Id.*

Smith argues that § 5-14-120 unconstitutionally discriminates against those employed in a minor's school district because they do not have authority or control over the minor who is not a student in their school and that abuse of that authority is what the statute is designed to redress. Smith states:

> The statute is designed to protect individuals from people who have some type of power, authority or control over them on a day-to-day basis. It makes perfect sense to hold accountable individuals who may lord over someone and use that position to satisfy sexual desires. A person may feel as though they do not have a choice because a grade or other achievement may depend on their actions if they do not give into 'their superior. That type of legislative scheme makes perfect sense. It does not, however, stand to reason, that an individual who does not possess the right to control the actions of another, should be classified the same as an individual who does not maintain some degree of control. Teaching in the same school district does not give an individual access or control over another by virtue of his or her employment.

To support his argument, Smith argues that since he was no longer the victim's teacher at the time the incidents occurred, he was in a position no different from, for example, a Wal-Mart employee or a pharmacy technician, whose sexual intercourse with a minor would not have been a crime. Smith argues that "[w]hat made the activity a crime was simply who wrote out his paycheck each month."

The State contends that the General Assembly:

> could have rationally concluded that employees in a minor's school or school district occupy a position of trust with respect to that

minor and, thus, have a special obligation to refrain from having sexual intercourse with that minor in a way that Wal-Mart employees or pharmacy technicians might not. Moreover, contrary to appellant's argument, some employees of a school district do have authority or control over minors even though they are not employed at the minors' schools. A district superintendent, for example, has authority or control over minors who are not students in a school in which the superintendent is employed.

Further, the State contends that the facts of the present case demonstrate why § 5-14-120(a) survives an equal-protection challenge, stating:

Appellant was the victim's teacher while she was a student at Goza Junior High School. The two recognized their attraction for one another at the end of the school year, and appellant kissed her on the cheek, but they did not engage in sexual intercourse. The next school year the victim was a high-school student, while appellant remained a bus driver and junior-high-school teacher. After the victim began attending high school, appellant would drive his bus by the high school where the victim was having band practice. Their relationship ultimately progressed to their having sexual intercourse, usually in appellant's junior-high classroom.

Appellant developed a relationship with the victim as a direct result of his being her teacher and maintained that relationship as a direct result of his being employed in the same school district. The legislature could have rationally concluded that persons such as appellant should not use their positions as school and school-district employees to find and cultivate their underage sexual partners.

We agree. Acts 1985, No. 326, § 1, which created the offense of violation of a minor in the first degree, provides:

(1) A person commits the offense of violation of a minor in the first degree if he engages in sexual intercourse or deviate sexual activity with another person not his spouse, who is more than thirteen (13) years of age and less than eighteen (18) years of age, and the actor is the other person's guardian.

Acts 1985, No. 326, § 3, provides legislative intent for the creation of the offenses of violation of a minor in the first and second degree. It provides, in part:

It is hereby found and determined by the General Assembly that certain individuals who are in a position of power or authority over minors have avoided prosecution under current law for certain sexual activities with such minors and that such activities by individuals should be punished.

In 1993, the legislature amended the statute, substituting "minor's guardian" for "other person's guardian" and adding "an employee in the minor's school or school district, a temporary caretaker, or a person in a position of trust or authority of a minor." Acts 1993, No. 265, § 1. Though the legislature did not expressly indicate its intent when it amended the statute, it is certainly possible that the legislature rationally concluded that minor students should be protected, not only from employees in the minors' schools, but also from employees in the minors' school districts.

■ School-district employees are authority figures to minor children. Children are instructed to obey and to respect employees of their school district and, children are instructed that they may suffer consequences if they are insubordinate to school district employees. The classification of school-district employees is relevant because it is the school district employees who have daily access to minor children. The State has an interest in the general welfare of children, and it certainly has an interest in making laws which punish school-district employees who abuse their positions of trust and authority to facilitate inappropriate relationships with children. Smith has failed to prove that § 5-14-120 violates his right to equal protection.

### Admission of Evidence

Smith argues that the trial court erred in admitting certain items of evidence because they were not relevant to determining his guilt because they did not prove the *corpus delicti* of his guilt. He also argues that even if the items were found to be relevant, their probative value was outweighed by their prejudicial effect. The following items of evidence are at issue: (1) electronic mail

messages; (2) five pieces of jewelry; (3) cellular telephone records; (4) perfume; and (5) an anonymous Valentine's Day newspaper advertisement.[2] He argues:

> The Appellant was charged with a strict liability crime, meaning that either he did or did not engage in sexual intercourse with [A.C.]. It is the very act that is the crime, nothing more and nothing less. It is reasonable to conclude that the relevant evidence in this case should bear directly on sexual contact or deviate sexual activity. Proof of a friendship does not prove the corpus delicti of the crime. The proof was used for nothing more than to inflame the jury.

■■ We disagree. Evidence which is offered by the State to corroborate other evidence is relevant. *Misskelley v. State*, 323 Ark. 449, 915 S.W.2d 702, *cert. denied*, 519 U.S. 898 (1996). In the present case, A.C. testified that she and Smith had a sexual relationship while she was a student in the same school district in which Smith was employed. A.C.'s testimony alone would have been enough to support a conviction. *See, e.g., Rains v. State*, 329 Ark. 607, 953 S.W.2d 48 (1997). However, the State is not required to prove its case by the least amount of evidence possible. In the present case, since Smith denied the existence of a sexual relationship, A.C.'s credibility was at issue. In addition to testifying about the sexual relationship between her and Smith, A.C. testified about other aspects of her relationship with Smith. She testified that she received gifts of perfume and jewelry from Smith. She also testified that she and Smith communicated about their relationship via cellular telephones and electronic messages. It is true that the gifts and the means of communication do not establish that A.C. and Smith had a sexual relationship; however, the admission of such evidence does corroborate A.C.'s testimony concerning a relationship with a teacher which had gone beyond

---

[2] Smith also states that additional items of evidence are at issue, including: (1) a song or poem; (2) computer data; (3) vehicle loan information; (4) camouflage utility pants; (5) a school photo signed by Smith; (6) a watch; and (7) credit card information. However, Smith does not develop any argument on these additional items; rather, he makes only the blanket statement that the additional items are inadmissible because they are irrelevant. We have repeatedly held that we will not consider an argument that presents no citation to authority or convincing argument. *Kelly v. State*, 350 Ark. 238, 85 S.W.3d 893 (2002).

an appropriate teacher-student relationship. Since A.C.'s credibility was at issue, the State should be allowed to refute doubts concerning her credibility.

■ In evidentiary determinations, a trial court has wide discretion, and we do not reverse a ruling on the admission of evidence absent an abuse of discretion. *Id.* The trial court did not abuse its discretion in determining that the evidence of gifts, electronic messages, and cellular telephone use was relevant.

■■ Similarly, the trial court did not abuse its discretion in determining that the evidence of the Valentine newspaper advertisement was relevant. Prior to trial, the trial court granted Smith's motion in limine to exclude evidence of the advertisement. However, at trial, the trial court changed its position on the ad, finding that it was relevant. We have stated that a motion in limine is a threshold motion. *ConAgra, Inc. v. Strother*, 340 Ark. 672, 13 S.W.3d 150 (2000); *Nolen v. State*, 278 Ark. 17, 643 S.W.2d 257 (1982). We have also held that the trial judge is at liberty to reconsider his or her prior rulings during the course of a single trial. *Davis v. State*, 325 Ark. 96, 925 S.W.2d 768 (1996). In the present case, after hearing testimony at trial, the trial court reconsidered its prior ruling on the ad and determined that it was relevant evidence. We cannot say that the trial court abused its discretion in doing so.

Smith also argues that, even if the evidence at issue is deemed relevant, it should be excluded, pursuant to Rule 403 of the Arkansas Rules of Evidence. Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence.

Smith contends:

> One could deduce from this evidence that a friendship existed between the parties. But a friendship is not proof of sexual contact. There was a very high danger of unfair prejudice that could exist.

The jury may very well have confused proof of a friendship as proof of sexual contact, thus being misled that proof of one is proof of another.

■ At trial, defense counsel, through cross-examination, as well as through his closing statement, made his point to the jury that the existence of a friendship did not equal the existence of a sexual relationship. Smith can hardly argue that the jury did not have that information before it. As stated previously, in evidentiary determinations, a trial court has wide discretion, and we do not reverse a ruling on the admission of evidence absent an abuse of discretion. *Davis v. State*, 350 Ark. 22, 86 S.W.3d 872 (2002).

Finally, Smith contends that the presentation of the electronic messages was cumulative evidence, which resulted in prejudice. Smith states: "When the jury sees this much documentation, even though it does not prove sexual contact, they have to be prejudiced against the Appellant, simply because of the size of the presentation." As the State points out, many of the electronic messages "consisted of a single message transmitted during a chat session, resulting in a document with as little as one line of text." In addition, the State argues that the volume of the electronic messages "reflected the parties' intimacy and, thus, the number of e-mails themselves has relevance and significance without regard to their content." We agree.

■■ The trial court has wide discretion in evidentiary matters, and we do not reverse a ruling on evidentiary matters absent an abuse of discretion. *Davis*, 350 Ark. at 38. Further, we have stated that merely cumulative evidence is not prejudicial. *Threadgill v. State*, 347 Ark. 986, 69 S.W.3d 423 (2002). We cannot say that the trial court abused its discretion in admitting the electronic messages.

### Admission of Yearbook Photograph

Smith argues that the trial court erred in admitting into evidence a yearbook photograph of A.C. which was taken over a year before A.C. stated that the criminal offenses took place. The State argues that Smith is procedurally barred from raising this issue because he failed to raise it below. The State is correct.

At trial, Smith argued that the photograph should not be admitted because it "is only used to inflame or prejudice, in that it doesn't prove the corpus delicti of the crime," and that the photograph was irrelevant because "it's not an element of the crime." On appeal, Smith contends that the photograph should not have been admitted because it did not fairly and accurately portray what A.C. looked like when the alleged sexual relationship began.

■■■ We will not consider an argument raised for the first time on appeal. *Mayes v. State*, 351 Ark. 26, 89 S.W.3d 926 (2002). A party cannot change the grounds for an objection or motion on appeal, but is bound by the scope of arguments made at trial. *Pyle v. State*, 340 Ark. 53, 8 S.W.3d 491 (2000). Smith's failure to raise the argument relating to the photograph's fair and accurate portrayal of A.C. precludes our review of that point on appeal.

### Testimony Concerning Pornography

Smith argues that the trial court erred in not declaring a mistrial when a prosecution witness testified that pornography was found on the defendant's computer. At trial, Jimmy Harper, an associate professor of computer science at Henderson State University, testified about evidence recovered from various computers. During cross-examination, defense counsel asked Harper if he gave all the recovered evidence to the investigator working on Smith's case. Harper stated that he had created a diskette, which included files from Smith's and A.C.'s computers, and given the diskette to the investigator. On redirect and recross, the parties continued to question Harper about evidence he was or was not able to retrieve from the computer. During final redirect examination, the prosecutor asked Harper what was on the recovered files. Harper responded:

> Well, there were a variety of different ones. Some of the files that were on the computer, they were not in the cash [sic] directory. They had been located, and I don't remember the directory. We would have to go back and look, but there were some various files that appeared to have been downloaded from the internet concerning different things. Some of the files that Mr. Bethell had asked me to make copies of were pornographic files.

At that time, defense counsel objected, stating: "Now, Judge, I'm going to object to that because we already established conclusively that that wasn't my client. That was someone else; and the State knows that." The State maintained that the parties had "never established" the fact that the pornographic files had been downloaded by someone other than the defendant. Later, out of the hearing of the jury, defense counsel conceded that the proof had not been established and apologized to the court, stating that he had "proof to that effect that I've developed, and I'll put it on if need be, but since it doesn't have anything to do with anything. . . ."

Defense counsel moved for a mistrial, arguing that the testimony concerning pornographic files was more prejudicial than it was probative. In the alternative, defense counsel moved for a cautionary instruction by the trial court. The trial court denied Smith's motion for a mistrial. When the jury returned to the courtroom, the trial court gave a cautionary instruction to the jury, stating:

> Ladies and gentlemen of the jury, you're hereby instructed to disregard any testimony given by Mr. Jimmy Harper regarding pornography, and you are to disregard any statements made by any of the attorneys after that testimony was given. You're further instructed that you are not to consider it as evidence in this case, and you're not to consider that testimony or those statements in your deliberations as a jury.

■■ We have made it clear that a mistrial is a drastic remedy and should be declared when there has been an error so prejudicial that justice cannot be served by continuing the trial, or when it cannot be cured by an instruction. *Williams v. State*, 338 Ark. 178, 992 S.W.2d 89 (1999). The trial court has wide discretion in granting or denying a motion for mistrial, and, absent an abuse of that discretion, the trial court's decision will not be disturbed on appeal. *Brown v. State*, 347 Ark. 308, 65 S.W.3d 394 (2001). When viewing the cautionary instructions the trial court issued at the time the testimony concerning pornography was given, we hold that any potential prejudice was cured and that the trial court did not abuse its discretion in denying the motion for mistrial.

### Evidence of Extramarital Affair

At trial, the prosecutor elicited testimony from A.C. concerning an e-mail Smith had sent her, in which Smith stated: "I know we have divulged some 'secret' info about each other that no one else knows. That's the beauty of our relationship, among other things. We have learned to trust and accept each other unconditionally." The prosecutor asked A.C. what information she and Smith had shared with each other. Over Smith's objection that the information was irrelevant, A.C. testified that Smith told her that twenty years earlier, he had an extramarital affair. She also stated that Smith told her that, as a result of the affair, a child was born.

Defense counsel moved for a mistrial, stating that the testimony was elicited only for the purpose of "character assassination." The trial court denied the motion for mistrial. Defense counsel did not request a cautionary instruction.

We previously articulated the standard of review for the grant or denial of a motion for mistrial. We have also stated that among the factors we consider on appeal is whether the defendant requested a cautionary instruction or admonition to the jury, the failure of the defense to request an admonition may negate the mistrial motion. *Boyd v. State*, 318 Ark. 799, 889 S.W.2d 20 (1994).

The State contends that Smith is not entitled to the drastic remedy of a mistrial when he himself had already introduced similar evidence. Indeed, prior to A.C.'s testimony, Smith admitted into evidence a transcript of an interview with A.C. which contained information about the extramarital affair. The transcript indicates that A.C. told investigators Smith had informed her that he had not had sexual relations with his wife because "he had had an affair twenty years ago and she had never forgiven him for that. . . ."

■ Smith can hardly show that he was prejudiced by A.C.'s testimony concerning the affair when he had already introduced the interview transcript which contained the same information. *See Gaines v. State*, 340 Ark. 99, 113, 8 S.W.3d 547 (2000). This, coupled with defense counsel's failure to request a cautionary instruction, clearly shows that the trial court did not abuse its discretion in denying Smith's motion for mistrial.

## Sexual History of Victim

■ Smith argues that the trial court erred in denying him the right to cross-examine A.C. regarding her sexual history when, referring to Smith, she stated: "He was the only one I was with." Smith contends that A.C. "opened the door" to questions about her prior sexual history when she testified that she had only had a sexual relationship with Smith. The State argues that Smith's claim is barred because he did not proffer evidence he proposed to elicit from A.C. We agree. Without the proffer, this court has no way of deciding if the evidence was relevant. See Donihoo v. State, 325 Ark. 483, 931 S.W.2d 69 (1996).[3]

## Jury Instruction

Smith argues that the trial court erred in the guilt phase of the trial by not giving the jury instruction regarding the greater weight of the evidence. At trial, Smith proffered the following instruction, which he described as a "model civil instruction, tailored to a criminal proceeding":

> The State has the burden of proving the guilt of the defendant in this matter beyond a reasonable doubt. This burden is not necessarily met by the State presenting the greater number of witnesses, who testify to any fact or state of facts. You, the juror must weigh all evidence presented in the same manner, both for and against any issue or issues. In doing so, any and all doubts you may have toward any fact or evidence presented, must be resolved in favor of the defendant. In other words, simply because the State presents numerous witnesses to testify as to any issue or issues does not necessarily mean that it has met its burden of proof in this

---

[3] Though we do not address the merits of Smith's claim, we take this opportunity to note that, contrary to Smith's and the prosecutor's agreement at trial that the Rape Shield Statute is inapplicable in a case involving violation of a minor, the Rape Shield Statute would have been applicable to defense counsel's attempt to cross-examine the victim concerning her sexual history. Smith cites Donihoo v. State, 325 Ark. 483, 931 S.W.2d 69 (1996), for the proposition that the Rape Shield Statute does not apply to cases where the defendant is charged with violation of a minor. Subsequent to our decision in Donihoo, the General Assembly amended the Rape Shield Statute. See Acts 1997, No. 970, § 1 (codified at Ark. Code Ann. § 16-42-101(b) (Repl. 1999)). As a result of the amendment, the Rape Shield Statute applies to, among other things, the prosecution of violation of a minor in the first degree.

matter. If the State fails to do so, you are instructed to find with respect to that issue or issues, in favor of the defendant.

■■■ We have stated that a trial court is *required* to give a model instruction unless it finds that the instruction does not accurately state the law. *McCoy v. State*, 348 Ark. 239, 74 S.W.3d 599 (2002) (supp. opin. denial of reh'g). Smith does not argue that the instruction given by the trial court was a misstatement of the law. Since there is no allegation that the given instruction was a misstatement of the law, the trial court could not have erred in doing what it was *required* to do.

### Testimony During Sentencing

Smith argues that the trial court erred in allowing A.C.'s mother to testify, during sentencing, about Smith's alleged violations of a No Contact Order. During sentencing, Smith objected, arguing that the evidence was not relevant and that it was more prejudicial than probative. The trial court overruled the objection, noting that it was part of the victim-impact statement.

■■ Relevant "[e]vidence of aggravating and mitigating circumstances" is admissible at sentencing. Ark. Code Ann. § 16-97-103(6) (Supp. 2001). The State, citing *Hill v. State*, 318 Ark. 408, 887 S.W.2d 275 (1994), argues that evidence that Smith violated the No Contact Order is evidence of aggravating circumstances "because it 'increases [his] guilt or [their] enormity or adds to [their] injurious consequences, . . . above and beyond the essential constituents of the crime . . . itself." We agree.

■■ In the absence of prejudice, Arkansas law permits the introduction of "additional evidence relevant to sentencing." *Skiver v. State*, 336 Ark. 86, 99, 983 S.W.2d 931 (1999) (citing Ark. Code Ann. § 16-97-101(2) (Supp. 1997)). Evidence relevant to sentencing may include, but is not limited to, prior convictions of the defendant, victim-impact evidence or statements, relevant character evidence, and evidence of aggravating or mitigating circumstances. *Marshall v. State*, 342 Ark. 172, 27 S.W.3d 392 (2000) (citing Ark. Code Ann. § 16-97-103 (Supp. 1999)).

Smith cites *Walls v. State*, 336 Ark. 490, 986 S.W.2d 397 (1999), for the proposition that evidence of another crime is not legitimate victim-impact evidence. The present case can be distinguished from *Walls, supra.* In that case, the appellant was

prosecuted for the rape of several young boys, and we held that the trial court erred in allowing victim-impact testimony that the appellant was an accessory to the murder of a family. *Id.* at 501. The appellant was sentenced by a judge, not by a jury, and the judge indicated that he found the allegations of the appellant's involvement in the murder to be true.

In the present case, A.C.'s mother testified that Smith had violated a no contact order, which provided that Smith was to have no contact with A.C. Smith maintains that whether he violated the no contact order is irrelevant. We disagree. The evidence concerning the no contact order was evidence of an aggravating circumstance because it related to the offenses for which Smith had been convicted. Smith was convicted of twenty counts of violation of a minor in the first degree. When he violated the no contact order, Smith continued to harm A.C., thus adding to the injurious consequences of his crime. We cannot say the trial court abused its discretion in allowing A.C.'s mother's testimony concerning the no contact order.

*Consecutive Sentences*

Smith argues that the trial court erred in imposing consecutive sentences when his conduct amounted to one course of conduct. The jury sentenced Smith to five four-year sentences. The prosecutor requested that the sentences be imposed consecutively. Smith requested that his sentences run concurrently because his offenses were part of a single course of conduct. The trial court imposed consecutive sentences.

"When multiple sentences of imprisonment are imposed on a defendant convicted of more than one (1) offense. . . the sentences shall run concurrently unless the court orders the sentences to run consecutively." Ark. Code Ann. § 5-4-403(a) (Repl. 1997). The decision to impose consecutive or concurrent sentences lies solely within the province of the trial judge, and the appellant assumes a heavy burden of showing that the trial judge failed to give due consideration in the exercise of that discretion. *Smallwood v. State*, 326 Ark. 813, 935 S.W.2d 530 (1996) (citing *Love v. State*, 324 Ark. 526, 922 S.W.2d 701 (1996)).

Smith concedes that it is within the trial court's discretion to determine whether a sentence should run consecutively or concurrently. However, he maintains that, section 5-4-

403(a), which applies to the imposition of sentences on defendants convicted of more than one offense, does not apply to him because "[t]he multiple counts demonstrate a course or pattern of conduct that had been followed . . . ." This argument is wholly without merit. An offense occurred with every act of sexual intercourse or deviate sexual activity. In *Rains, supra*, we noted that "[r]ape is not defined as a continuing offense; rather, it is a single crime that may be committed by either engaging in sexual intercourse or deviate sexual activity . . . ." 329 Ark. at 612 (citing *Tarry v. State*, 289 Ark. 193, 195, 710 S.W.2d 202 (1986)). We further noted that when a victim "testifies as to multiple acts of rape of a different nature, separated in point of time, there is no continuing offense, as a 'separate impulse was necessary for the commission of each offense." *Id.* While Smith was prosecuted under the statute for violation of a minor in the first degree and not under the rape statute, the same reasoning concerning offenses in rape cases is applicable to offenses in cases involving the violation of a minor. The commission of both offenses prohibits sexual intercourse or deviate sexual activity. The trial court did not err in imposing consecutive sentences.

### Jurisdiction of Trial Court to Hear Motion for New Trial

Smith argues that the trial court erred in finding that it did not have jurisdiction to hear a motion for a new trial when, following the filing of the first notice of appeal, defense counsel discovered in the file of the prosecuting attorney as well as the Arkadelphia Police Department, certain exculpatory documents that were not discovered to the defense, one of which the State denied having at trial.

We agree with Smith's contention that the trial court erred when it determined that it did not have jurisdiction to hear Smith's motion for a new trial. We have held that, after a notice of appeal is docketed and the record is filed in this court, the trial court loses jurisdiction, except for appointment of defense counsel. *Nance v. State*, 323 Ark. 583, 918 S.W.2d 114 (1996).

At a hearing on October 7, 2002, the trial court determined that it did not have jurisdiction to hear a motion for a new trial since Smith had already filed a notice of appeal. Smith's motion for a new trial was filed subsequent to his filing a notice of appeal; however, it was prior to the date the record was lodged.

Thus, the trial court had jurisdiction to hear the motion for a new trial. Still, even though the trial court erred in holding that it did not have jurisdiction to hear the motion, the motion was deemed denied thirty days after it was filed.

Rule 33.3(c) of the Arkansas Rules of Criminal Procedure provides, in part:

> (c) Upon the filing of a posttrial motion or application for relief in the trial court, the time to file a notice of appeal shall not expire until thirty (30) days after the disposition of all motions or applications. If the trial court neither grants nor denies a posttrial motion or application of relief within thirty (30) days after the date the motion or application is filed, the motion or application shall be deemed denied as of the 30th day.

Smith filed a motion for a new trial on September 24, 2002. On October 17, 2002, he filed an amended notice of appeal, which included an appeal of the original judgment, as well as an appeal of the trial court's October 7 decision that it lacked jurisdiction to hear the motion for a new trial.

Since the trial court neither granted nor denied Smith's September 24 motion for a new trial, the motion was deemed denied on October 24, 2002. Rule 2(b)(2) provides that "[a] notice of appeal filed before disposition of any post-trial motions shall be treated as filed on the day after the motion is deemed denied." Thus, the notice of appeal became effective October 25, 2002, and is effective to appeal both the original judgment and the deemed denial of the posttrial motion. *See State v. Fountain*, 348 Ark. 359, 72 S.W.3d 511 (2002).

Having determined that the issue is properly before this court, we reach the merits of Smith's argument. Smith argues that his convictions on counts one through twenty must be dismissed because the prosecution failed to disclose exculpatory documents in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Subsequent to the trial, defense counsel filed a request under the Arkansas Freedom of Information Act with both the prosecutor's office and the Arkadelphia Police Department. Upon receiving a response to the requests, defense counsel discovered documents which he was not given prior to trial.

At issue were the following documents: (1) a note, handwritten by A.C., in which she stated that she and Smith stayed at the motel "about an hour or so"; (2) a map, drawn by A.C., which depicted the location of the motel where she and Smith had engaged in sexual intercourse; (3) a note, handwritten by A.C., in which she stated that she and Smith engaged in sexual intercourse in a motel before Smith's birthday, when in fact, the date in question was after Smith's birthday; and (4) a note which appears to indicate that the parties engaged in sex "at least ten times" during the months of October, November, and December 1999.

▆ In *State v. Larimore*, 341 Ark. 397, 17 S.W.3d 87 (2000), citing *Strickler v. Greene*, 527 U.S. 263 (1999), we stated the test for *Brady* violations. We wrote:

> The Court, in *Strickler*, . . . outlined three elements of a true *Brady* violation. These components include: (1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either wilfully or inadvertently; and (3) prejudice must have ensued.

In *Lee v. State*, 340 Ark. 504, 511, 11 S.W.3d 553 (2000), we noted that prejudice can be demonstrated when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.

▆ The nondisclosure of the map, the note stating that A.C. and Smith had sex before Smith's birthday, and the note which states that the parties engaged in sex "at least ten times" during the months of October, November, and December 1999 do not constitute *Brady* violations. The evidence of the map is not exculpatory, nor is it impeaching. A.C. drew the map to explain the location of the motel to a police investigator. Though the map may not be entirely accurate, as the State points out, the police investigator was able to locate the motel on the basis of the map.

▆ The evidence of the note stating that A.C. and Smith had sex before Smith's birthday is not exculpatory and, even if the note could be considered impeaching, Smith has failed to prove that he was prejudiced by the nondisclosure of this information. He has not demonstrated that, had he been able to impeach A.C. about whether the sexual encounter took place before or after

Smith's birthday, there is a reasonable probability that the result of the proceeding would have been different.

■ The note stating that A.C. and Smith had sex "at least ten times" during the months of October, November, and December 1999, is not exculpatory evidence, nor is it impeaching evidence. At trial, A.C. testified that she had sex with Smith five or six times in October 1999, at least five times in November 1999, and at least two times in December 1999. The State points out that evidence of at least twelve sexual encounters is not inconsistent with the police officer's note of "at least ten times" during that same period, assuming that "at least ten times" refers to sexual encounters. Smith could not have impeached A.C.'s credibility with consistent statements.

■ The note in A.C.'s handwriting which states that A.C. and Smith stayed at the motel for "an hour or so" is not exculpatory evidence, but it could have been used as impeaching evidence. At trial, A.C. testified that she and Smith remained at the motel for around thirty minutes. Smith could have used the information on the note to attack A.C.'s credibility. The issue is whether Smith was prejudiced by the State's failure to disclose this information. We think not. Smith has failed to demonstrate that, had the evidence been disclosed, there is a reasonable probability that the result of the proceeding would have been different.

*Cross-Appeal*

■■ The State filed a cross-appeal arguing that Smith's sentences of no term of imprisonment and a fine of zero dollars for fifteen of his twenty convictions is illegal. The State's ability to appeal is not a matter of right; rather, it is limited to those cases described under Ark. R. App. P.—Crim 3. *See Thomas v. State*, 349 Ark. 447, 79 S.W.3d 347 (2002). Under Rule 3, we accept appeals by the State when our holding would establish important precedent or would be important to the correct and uniform administration of the criminal law. *See State v. Osborn*, 345 Ark. 196, 45 S.W.3d 373 (2001); *State v. Stephenson*, 340 Ark. 229, 9 S.W.3d 495 (2000). Sentencing and the manner in which statutory punishment provisions may be imposed arise in every criminal case where a conviction is obtained; hence, the application of our

statutory sentencing procedures requires uniformity and consistency. *Id.* Accordingly, we accept the cross-appeal by the State.

At trial, the State did not challenge the legality of the sentence; the State raises the issue for the first time on appeal. We treat problems of void or illegal sentences similar to problems of subject-matter jurisdiction and review them even if not raised on appeal and not objected to in the trial court. *Harness v. State,* 352 Ark. 335, 101 S.W.3d 235 (2003); *Bangs v. State,* 310 Ark. 235, 835 S.W.2d 294 (1992); *Lambert v. State,* 286 Ark. 408, 692 S.W.2d 238 (1985).

The trial court lacks authority to impose a sentence which is not authorized by statute. *See, e.g., State v. Fountain,* 350 Ark. 437, 88 S.W.3d 411 (2002). In the present case, Smith was convicted of twenty counts of a Class C felony. The statutes require that a defendant convicted of a Class C felony may be sentenced to pay a fine not exceeding $10,000, a term of imprisonment for no less than three years but no more than ten years, or both. Ark. Code Ann. §§ 5-4-104(d) (Repl. 1997) ; 5-4-201(a)(2) (Repl. 1997); 5-4-401(a)(4) (Repl. 1997).

The jury was instructed that for each count, Smith could receive a sentence of no more than ten years but no less than three years, or a fine of up to $10,000, or both. However, for fifteen of the twenty counts, the jury sentenced Smith to no term of imprisonment and a fine of zero dollars. We have held that this is not a proper sentence. In *Higgins v. State,* 326 Ark. 1030, 936 S.W.2d 740 (1996), the court held that a sentence of zero imprisonment and a zero-dollar fine for a Class B felony was not authorized under Arkansas law because the sentencing range was five to twenty years' imprisonment, or a fine not to exceed $15,000, or both. The court wrote:

> The first question before us is whether an imprisonment of zero years falls within the statutory range of from five to twenty years. The answer is that it does not, as zero imprisonment is no imprisonment at all. The next question is whether a fine of zero dollars is a fine not exceeding $15,000. Common sense tells us that something with no quantity or magnitude is, in fact, nothing. There was no fine in this case. The jury could have given a term of imprisonment or a fine or both, but instead it seized none of these options.

The sentence was clearly improper, and the trial court did not err in sending the jury back to reconsider the matter.

*Id.* at 1037 (citations omitted).

Pursuant to our holding in *Higgins, supra,* this case should be reversed and remanded for resentencing on counts six through twenty.

Affirmed on direct appeal; reversed and remanded for resentencing on cross-appeal.

ARNOLD, C.J., and THORNTON, J., not participating.