Keela McGAHEY  *v.*  STATE of Arkansas

CR 04-1041                                                210 S.W.3d 49

Supreme Court of Arkansas
Opinion delivered June 9, 2005

*Hubert W. Alexander,* for appellant.

*Mike Beebe,* Att'y Gen., by: *Valerie L. Kelly,* Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Keela McGahey appeals the order of the Desha County Circuit Court allowing attorney Jimmy Doyle to represent her and a codefendant at trial. For reversal, she argues that there was an impermissible conflict in Doyle's dual representation that resulted in prejudice to her. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(5). We find no error and affirm.

The record reflects that on March 8, 2002, Desha County police executed two search warrants for rooms nine and ten of the Pendleton Inn, which had been rented by James Hartwig. In those rooms, officers discovered items commonly associated with the manufacture of methamphetamine. They also found some personal items bearing Hartwig's name. Two days later, while observing the rooms, officers noticed Hartwig and Appellant drive up and park directly in front of the rooms. The pair was subsequently arrested.

Appellant and Hartwig were each charged by felony information with one count of manufacture of methamphetamine and one count of use of paraphernalia to manufacture methamphetamine. Initially, attorney Doyle was retained to represent Hartwig, and Appellant retained Hubert Alexander to represent her. Then, at a subsequent omnibus hearing held on August 26, 2002, Doyle informed the court that he had spoken with Alexander, and while Alexander represented Appellant in a case in Little Rock, he was

not representing her in the action in Desha County Circuit Court. Doyle then indicated that he was going to speak to Appellant to determine if there was a conflict of interest or whether he could also represent her.

At the next pretrial hearing held on November 4, 2002, Doyle appeared and stated on the record that he represented Appellant and Hartwig. The court then addressed a motion filed by the State to disqualify Doyle from representing Appellant. In response to the State's motion, Doyle stated that both of his clients had signed a waiver regarding any potential conflict of interest caused by the dual representation.[1] He also stated that the evidence in their cases was identical. The State responded that they would be satisfied and would no longer pursue its motion if the clients had signed a waiver regarding any potential conflict. The court then addressed Appellant and Hartwig and explained the purpose of the State's motion and asked each of them if it was their desire for Doyle to represent them in this case. Each answered in the affirmative.

At a pretrial hearing held on February 24, 2003, the trial court again inquired of Doyle if there were any possible issues that would make it difficult for him to represent both Appellant and Hartwig. Doyle stated that he did not believe the joint representation would be a problem and again reiterated that his clients had signed a waiver. The State then inquired as to whether the waivers had ever been filed of record. Doyle stated that he had Appellant's signed waiver with him and that he would have to get Hartwig's from his file. After reviewing the document, the State informed the trial court that the document waived the attorney-client privilege as to sharing information between the codefendants, but that it did not resolve any potential conflict issue that might arise. Thereafter, the State requested that the trial court inquire of Appellant and Hartwig in open court as to whether they consented to the joint representation and waived any potential conflict of interest, which the court did. Both Appellant and Hartwig indicated on the record that they understood that there was a potential conflict and that they wished to waive it and allow Doyle to represent them both.

---

[1] Appellant's signed waiver is not in the record before this court.

A jury trial was held on March 6–7, 2003. Appellant was convicted on both counts and sentenced to a term of twenty-five years' imprisonment in the Arkansas Department of Correction. This appeal followed.

For her only point on appeal, Appellant argues that the trial court abused its discretion in failing to grant the State's motion to disqualify Appellant's defense counsel because there was a conflict of interest in representing her and her codefendant. Appellant argues in the alternative that the trial court did not clearly determine that there was a conflict of interest prior to trial and, thus, violated her constitutional rights. The State counters that Appellant waived any potential conflict of interest and her argument on appeal is therefore without merit. The State is correct.

■ This court has recognized that requiring or permitting joint representation, where a single attorney represents codefendants, is not *per se* violative of constitutional guarantees of effective assistance of counsel. *Myers v. State*, 333 Ark. 706, 972 S.W.2d 227 (1998) (citing *Holloway v. Arkansas*, 435 U.S. 475 (1978)). Appointing or permitting a single attorney to represent codefendants, however, does create a possible conflict of interest that could prejudice either or both clients. *Id.* (citing *Burger v. Kemp*, 483 U.S. 776 (1987)). Simply because there is a possibility of prejudice, there is no justification for an inflexible rule that would presume prejudice in all cases. *Id.* Instead, prejudice is only presumed if the defendant demonstrates that counsel "actively represented conflicting interests," and "an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 716, 972 S.W.2d at 232 (quoting *Sheridan v. State*, 331 Ark. 1, 4, 959 S.W.2d 29, 31 (1998)).

■ Moreover, our case law is clear that a criminal defendant may waive his attorney's conflict of interest. *Price v. State*, 347 Ark. 708, 66 S.W.3d 653 (2002); *Lee v. State*, 343 Ark. 702, 38 S.W.3d 334 (2001). However, this court has said that any waiver of the Sixth Amendment right to counsel must be made knowingly, intentionally, and voluntarily. *Price*, 347 Ark. 708, 66 S.W.3d 653; *Murray v. State*, 280 Ark. 531, 659 S.W.2d 944 (1983).

In *Lee*, 343 Ark. 702, 38 S.W.3d 334, the appellant argued that he was entitled to relief under Ark. R. Crim. P. 37 because his Sixth Amendment right to conflict-free counsel was violated where the trial court refused to relieve his trial counsel and appoint

new counsel. In that case, two deputy public defenders were appointed to represent the appellant in several different criminal cases in different divisions of circuit court. The appellant sought repeatedly to have the attorneys relieved from representing him, but the appellant subsequently stated on the record that he understood the potential conflict and had decided to waive it. He further stated that his waiver was a free and voluntary choice on his part. Immediately prior to the start of his trial, however, the appellant tried once more to relieve counsel. His motion was denied, and he proceeded to trial and never objected to his counsels' representation. Following his conviction, the appellant filed a direct appeal, but again did not argue that his trial counsel operated with a conflict of interest. It was not until he filed his motion for Rule 37 relief that the appellant argued that his right to conflict-free counsel had been violated. This court rejected his argument, noting that he had waived any conflict on the record and that he had also failed to raise the issue at trial or on direct appeal.

Similarly, in *Myers*, 333 Ark. 706, 972 S.W.2d 227, the appellant argued that he was entitled to Rule 37 relief because his trial counsel had a conflict of interest in representing both him and his wife. This court rejected his argument, holding that where the appellant was informed of the conflict, declared that he was satisfied with the services rendered by his attorney, and voluntarily proceeded with his retained counsel, any argument regarding a conflict of interest had been waived.

The question now before this court is whether Appellant properly waived the alleged conflict of interest in this case. A review of the record reveals the following colloquy that took place at a pretrial hearing:

> THE COURT: Now, do you understand . . . in situations where one lawyer represents two defendants that there could be potential conflicts, or there could be conflicts with your defenses or some other aspects of the trial? Do you understand that possibility?
>
> . . . .
>
> [APPELLANT]: Yes, I understand.
>
> THE COURT: And, I presume that your lawyer has discussed those potential conflicts with you?

[APPELLANT]: Yes.

. . . .

THE COURT: And not only potential, . . . but they could be in fact real. Do you understand that?

. . . .

[APPELLANT]: Yes.

THE COURT: Okay. Now, if during the course of the trial it determines that there is an actual conflict is it your desire to waive or to give up those possible conflicts and continue for your lawyer to represent you?

. . . .

[APPELLANT]: Yes.

THE COURT: Mr. Doyle, you're in conformity with your clients' responses?

MR. DOYLE: Yes. And, I've explained the possible conflicts to them, and that's the way I explained it. And we all agree that it was a common defense and that there would be, didn't see any, really any likelihood of any conflict.

THE COURT: So is that the strategy of counsel to represent them both?

MR. DOYLE: Yes.

THE COURT: And you don't foresee any potential or real conflicts?

MR. DOYLE: No, sir.

We believe the present situation is analogous to one addressed by this court in *Murray*, 280 Ark. 531, 659 S.W.2d 944. In that case, counsel represented the appellant and his wife in a pending criminal action. No mention was ever made of a possible

conflict of interest until the issue was raised in a postconviction proceeding. In rejecting the appellant's argument that there was a conflict that prejudiced him, this court stated that the appellant knew of the alleged conflict, intentionally failed to disclose it, and voluntarily proceeded with his retained counsel. The court subsequently held that as a result the appellant, after knowingly completing the trial with such counsel, was barred from arguing that he was prejudiced as a result of that representation. *Id.* (citing *United States v. James*, 505 F.2d 898 (5th Cir. 1975)).

Here, Appellant never advised the trial court that there was a potential conflict of interest. In fact, it was the State who sought to have Doyle disqualified due to a potential conflict, and Appellant stated on the record that she was satisfied with his representation and wanted him to continue to represent her, even after the trial court cautioned Appellant about a potential conflict and the effect of waiving it. On two separate occasions, the trial court inquired of Appellant as to whether she wanted to proceed with Doyle as her counsel. Each time she indicated that she did. At no point did Appellant or Doyle ever inform the trial court that her codefendant made a statement to authorities implicating her in the crime. Appellant cannot proceed with Doyle's representation and then complain about a potential conflict of interest only after the trial has ended with her being convicted of the offenses charged.

Moreover, Appellant's argument that the trial court should have questioned the State and defense counsel more thoroughly in order to discover the conflict of interest is not well taken. Her argument on this point is nothing more than a conclusory statement lacking any convincing argument or supporting authority. This court has repeatedly held that it will not consider an argument on appeal that has no citation to authority or convincing legal argument. *See Smith v. State*, 354 Ark. 226, 118 S.W.3d 542 (2003); *Kelly v. State*, 350 Ark. 238, 85 S.W.3d 893 (2002).

Affirmed.