The Honorable Lindsley Smith State Representative 340 North Rollston Avenue Fayetteville, Arkansas 72701-4178
Dear Representative Smith:
I am writing in response to your recent request for my opinion on the following question:
 Would an Act of the General Assembly authorizing the Division of Vital Statistics of the Department of Health to waive the fee for birth certificates for the homeless and victims of domestic abuse raise any constitutional or statutory problems under A.C.A. § 20-7-401 et seq.?
RESPONSE
Generally speaking, it is difficult to offer an advisory opinion regarding hypothetical future legislation. Op. Att'y Gen. 2006-120. While I can set forth the law under A.C.A. § 20-7-401 et seq. and point out challenges that the legislation you described might face, this discussion cannot be considered comprehensive without a copy of the proposed act. With that caveat, it is my opinion that an act that waives fees for birth certificates without replacing the fee revenues lost, would conflict with the referenced statutory scheme as it presently exists. Of course, the General Assembly is free to amend its own acts, either expressly or by implication, absent constitutional concerns. However, it is my opinion that such an act would constitute an unconstitutional impairment of a contract under Ark. Const. art. 2, § 17 and U.S. Const. art. 1, § 10. While your reference to the fact that the fee waiver would be limited to a specific population suggests the possibility *Page 2 
that the act might create an equal protection problem as well, it is my opinion that it would not.
The statutory scheme referenced in your opinion request, A.C.A. § 20-7-401 et seq., is known as the Department of Health Public Health Laboratory Act of 2003. A.C.A. § 20-7-401 (2005). The purpose of this act was to provide "for the construction and equipping of a modern public health laboratory." A.C.A. § 20-7-402 (2005). The construction of said laboratory was financed by a loan to the State Board of Health from the Arkansas Development Finance Authority (ADFA) pursuant to A.C.A. § 20-7-405. A.C.A. § 20-7-405 (2005). It is my understanding that the ADFA issued bonds to fund the loan. This ADFA loan is secured by certain fee revenues as set forth in the act, including revenues from the fees authorized by A.C.A. § 20-7-123(b)(1)(H)-(J), as well as revenues from additional fees set forth by A.C.A. § 20-7-407. A.C.A. § 20-7-406
— 407 (2005). The fees from which these fee revenues are obtained include a number of fees related to birth certificates; thus, the "fee for birth certificates" referenced in your opinion request has likely been pledged to the ADFA as security for a loan to the State Board of Health. Moreover, in apparent recognition of the fact that the fees referenced by A.C.A. § 20-7-407 are subject to the ADFA's security interest, subsection 20-7-408(e)(1) states:
 (e)(1) So long as the loan is outstanding, all fees shall be imposed and all fee revenues shall be collected and applied as provided in this subchapter.
A.C.A. § 20-7-408(e)(1) (2005) (emphasis added).
There is, however, a reserved power to release fee revenues under certain conditions. A.C.A. § 20-7-406(a). Section 20-7-408(e)(2) provides:
 (2) However, particular fees may be reduced or eliminated so long as remaining fees are increased or new fees are added to the end that the aggregate annual amount of fee revenues shall always equal at least three million dollars ($3,000,000).
A.C.A. § 20-7-408(e)(2) (2005).
For these reasons, I do not believe that the statutory scheme referenced in your opinion request, in its present form, permits the waiver of "the fee for birth certificates" for any population unless other fees are increased or new fees are *Page 3 
added to make up the difference in total fee revenues, as required by A.C.A. § 20-7-408(e)(2). Put another way, the contemplated statute waiving the fees for birth certificates and A.C.A. § 20-7-408(e) would be in conflict. Of course, the General Assembly may amend its prior acts, either expressly or impliedly, absent some constitutional constraint. Jones v. Mear, 256 Ark. 825, 828, 510 S.W.2d 857 (1976).
However, it is my opinion that an act which attempts to waive any of the fees subject to the ADFA's security interest, without replacing those fee revenues, as set forth above, would constitute an unconstitutional impairment of a contract.
The statutory scheme referenced in your opinion request, along with the authorizing resolution and agreements and writings executed pursuant to said statutory scheme, constitutes a contract between the State Board of Health and the ADFA. A.C.A. § 20-7-411(a) (2005). The ADFA may enforce the Board of Health's contractual obligation by any legal or equitable remedy. See A.C.A. § 20-7-411(a) (2005).
The Arkansas Constitution provides:
 No bill of attainder, ex post facto law, or law impairing the obligation of contracts shall ever be passed; and no conviction shall work corruption of blood or forfeiture of estate.
ARK. CONST. art. II, § 17 (emphasis added).
The United States Constitution provides:
 No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility.
U.S. CONST. art. I, § 10 (emphasis added).
 "Impair" means to make worse; to diminish in quality, value, excellence, or strength; to deteriorate. . . . [E]very state law which weakens the obligations of contracts previously made, or renders them less operative, is a violation of the provisions against the impairment of the obligations of contracts. Whatever enactment *Page 4 abrogates or lessens the means of the enforcement of a contract impairs its obligations.
Scougale v. Page, 194 Ark. 280, 106 S.W.2d 1023, 1029-30 (1937) (emphasis added).
 When there is a change in the method of enforcement of a contractual obligation, the test for determining whether the obligation has been impaired is whether the new procedure is as `adequate and efficacious' as the old. . . . It follows, therefore, that any change involving a substitution of security which does not diminish the prospects of, or adversely interfere with, expected payment does not constitute a contractual impairment.
Beaumont v. Faubus, 239 Ark. 801, 806-07 394 S.W. 2d 478, 482-83 (1965).
However, when an act removes revenue which served as security for an obligation and fails to provide a substituted source of revenue or security, then that removal of collateral impairs the obligation of contract. See Kurrus v. Priest, 342 Ark. 434, 446-47, 29 S.W.3d 669,675-76 (2000).
In this instance, the fee revenues from birth certificate fees are part of the collateral for the ADFA loan. An act which attempts to waive some of these fees without either increasing other fees or creating new fees in order to insure that the value of the collateral is undiminished, would lessen the means available to enforce the obligation. For this reason, it is my opinion that any waiver of fees which does not provide a substituted source of revenue or security would constitute an unconstitutional impairment of a contract.
Again, the act itself states that fees may not be waived unless "remaining fees are increased or new fees are added to the end that the aggregate annual amount of fee revenues shall always equal at least three million dollars ($3,000,000)." A.C.A. § 20-7-408(e)(2) (2005). Thus, as long as the new legislation, which waives the fees, complies with this section, there would be a constitutionally permissible "substitution of security which does not diminish the prospects of, or adversely interfere with, expected payment[.]" Beaumont,239 Ark. at 807, 394 S.W.2d at 483. *Page 5 
Finally, although the contemplated act would waive the fees in question for a specific population only, it is my opinion that this waiver would not violate the principles of equal protection.
 The equal protection clause permits classifications that have a rational basis and are reasonably related to a legitimate government purpose. Equal protection does not require that persons be dealt with identically; it only requires that classification rest on real and not feigned differences, that the distinctions have some relevance to the purpose for which the classification is made, and that their treatment be not so disparate as to be arbitrary.
Smith v. State, 354 Ark. 226, 235-36, 118 S.W.3d 542, 547 (2003).
You have not stated the basis for the legislation or its purpose, but I assume that the basis for the selection of the class is related to inability to pay and that the purpose is to enable Arkansans, who would not otherwise be able to do so, to access their vital records. Based on these assumptions, it is my opinion that the contemplated act would withstand rational basis scrutiny.
In sum, it is my opinion that an act which waives fees for birth certificates without replacing the fee revenues lost, would create a conflict with A.C.A. 20-7-401 et seq., in its present form. Normally, the General Assembly would be free to simply amend the existing statute, either expressly or by implication; however, in this case, to do so would, in my opinion, constitute an unconstitutional impairment of a contract under Ark. Const. art. 2, § 17 and U.S. Const. art. 1 § 10.
Assistant Attorney General Jennie Clingan prepared the foregoing opinion, which I hereby approve.
Sincerely,
 DUSTIN McDANIEL, Attorney General *Page 1